(No. 20598.—

JOHN PETER *et al.* Appellees, *vs.* WILLIAM H. PETER *et al.*
Appellants.

*Opinion filed April 23, 1931.*

JOYCE & ZERWECK, McHALE & McHALE, and JOHN E. HAMLIN, for appellants.

LOUIS BEASLEY, and EDWARD C. ZULLEY, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This appeal is to reverse the decree of the city court of East St. Louis granting the prayer of appellees' bill for partition of certain lots in said city. The bill alleges that John Peter, Sr., died September 24, 1914, seized in fee simple of the lots in question and leaving him surviving Mary Peter, his widow, John Peter, Joseph Peter, Della Houston and Louisa Robb, appellees, and William H. Peter, one of the appellants, as his only heirs-at-law; that on September 22, 1911, John Peter, Sr., was in the probate court of said county declared a drunkard and spendthrift, and a conservator was appointed for him, qualified and acted as such; that on October 13, 1911, John Peter, Sr., executed warranty deeds to the aforesaid lots conveying the same to his wife, Mary Peter; that on the same day he executed his last will and testament, in and by which he devised and bequeathed all of his estate to his wife, Mary Peter, and appointed her executrix, and that the will was by Mary Peter filed in the office of the clerk of the probate court of said county, together with a petition that it be admitted to probate. The bill then alleges that Mary Peter accepted title under said deeds and refused to accept the testamentary

disposition mentioned in the will of her husband, because she filed an affidavit in the probate court which set forth that she was the widow of John Peter, Sr., deceased, who left no property, effects nor money because he had on October 13, 1911, conveyed by warranty deed all the property he then possessed, to her. She then asked that the petition for administration be withdrawn. The bill further alleges that the probate court entered an order removing the estate from the docket; that on December 6, 1924, Mary Peter borrowed $1800 from appellant Southern Illinois Trust Company and gave a mortgage on said premises to secure the same; that on September 5, 1925, Mary Peter borrowed $1500 from appellant Union Trust Company and executed a mortgage on said premises to secure the same; that Mary Peter died March 6, 1928, testate, and that said mortgages are null, void and of no effect except as clouds on the title of said premises. It is alleged that the children of John Peter, Sr., own the lots described in the bill as tenants in common, and the bill prays for the removal of the mortgages as clouds and for partition. Appellants' demurrer to the bill was overruled, and by their answer they denied that Mary Peter refused to accept the testamentary disposition of the premises mentioned in the will and alleged that the will of John Peter, Sr., was duly probated and admitted to record in the probate court on June 20, 1928, and is now in full force and effect, and by the probate thereof Mary Peter became vested in fee simple of the premises described therein. The answer further avers that the will of Mary Peter was admitted to probate in said probate court, and by it appellants William H. Peter and Idella Sullivan became the owners of said real estate.

Replications were filed and the cause was referred to the master. Before the master the facts concerning the ownership of the premises by John Peter, Sr., his death, the name and death of the widow, the names of the children of John Peter, Sr., the appointment of a conservator, the

deeds to Mary Peter, the recording thereof after the death of John Peter, Sr., the filing of the will and petition for probate thereof, and the filing of a verified petition by the widow requesting that the petition for administration be withdrawn, were stipulated. It was also stipulated that the probate court, on the petition of the widow to withdraw administration, entered an order removing the cause from the docket, "with leave to re-instate if assets are discovered." The execution of the notes and mortgages was also stipulated, as was the fact that the widow, from the time of her husband's death until her death, had possession of all the property covered by the deeds and will, managed and controlled same, paid taxes and made repairs. The parties also stipulated that the appeal of John Peter, Jr., from the order of the probate court admitting the will of John Peter, Sr., to probate was dismissed and *procedendo* filed in probate court.

The evidence showed that when the loans were made the abstracts and certificates of title showed only the deeds of John Peter, Sr., and not his will. Appellants put in evidence certified copies of the wills of John Peter, Sr., and Mary Peter, together with certified copies of the orders admitting both to probate.

The master found there was not sufficient proof of renunciation by the widow; that the deeds to Mary Peter and her mistaken belief that they were valid had no effect on the will of John Peter; that the Dower act furnishes a complete method of renouncing a will by surviving husband or wife; that on the probate of John Peter's will after the death of Mary Peter the real estate in question passed to Mary in fee and by her death and will to appellants William H. Peter and Idella Sullivan, and that the mortgages are valid existing liens on the property. He recommended dismissal of the bill for want of equity. The chancellor sustained exceptions to this report and entered a decree finding the wills of John Peter, Sr., and Mary Peter void, removing

them and the mortgages as clouds on the title and ordering partition in accordance with the prayer of the bill.

Appellants urge as grounds for reversal, (1) Mary Peter did not abandon, renounce or refuse to take the property given her by the will of John Peter, Sr.; (2) the will of John Peter became effective from the time of his death and vested title in Mary Peter upon its admission to probate and record even though such probate was after the death of Mary Peter; (3) the city court had no jurisdiction to declare the wills of John Peter, Sr., and Mary Peter void.

It is elementary that to support a decree in equity the proof must sustain the allegations of the bill. (*Rolinitis* v. *Rolinitis,* 335 Ill. 260; *Lewis* v. *Lewis,* 316 id. 447; *Fisher* v. *Burks,* 274 id. 363; *Houlihan* v. *Morrissey,* 270 id. 66; *Leahy* v. *Nolan,* 261 id. 219.) By their bill appellees alleged that the widow refused to accept the property willed to her by her deceased husband. Appellants took issue on this question of fact. Unless her petition filed in the probate court requesting withdrawal of the administration of her husband's estate can be considered evidence of refusal on her part to accept the property devised by the will there is no evidence in the record to support that allegation. The law does not compel a devisee to accept a devise against his consent. (*People* v. *Flanagin,* 331 Ill. 203.) However, the law will presume, in the absence of evidence, that a beneficial devise has been accepted. Unless there is a specific disclaimer or renunciation of such devise by some unequivocal act or a renunciation as provided by statute the devise vests according to the terms of the will. (*People* v. *Flanagin, supra; Burrett* v. *Sillman,* 13 N. Y. 93; 4 Kent's Com. 533.) It is not claimed that the widow specifically disclaimed or rejected the property devised to her or that she filed a renunciation in the form and manner provided by the statute. She, on the contrary, took the property devised though she thought she was taking the same by deed. The deeds, admitted to be invalid, and the

will, covered the same property. Her request to withdraw the administration of the estate cannot be construed as a refusal to accept the property devised, for she took and enjoyed that property. The will remained on file in the probate court. The administration, only, was withdrawn, "with leave to re-instate if assets are discovered." Nor can such request be construed as a renunciation under the statute, since that statute was not complied with. The statute provides a complete method for renunciation under it. (*Cowdrey* v. *Hitchcock*, 103 Ill. 262.) We conclude, therefore, that the evidence does not support the allegation of the bill that the widow refused to accept the property devised.

Counsel for appellees argue that though the widow was mistaken in believing that the deeds from her husband vested the property in her, her mistake was one of law, and that equity will not relieve against a mistake of law. While it has been stated as a general rule that a mistake of law pure and simple is not adequate ground for relief in equity, yet even when the mistake is one of law equity sometimes intervenes. (*Moore* v. *Shook*, 276 Ill. 47.) Courts of equity have aided mistaken parties because of the demands of justice. Private legal rights, interests, duties or liabilities are always more or less complex, particularly to the layman. They depend upon conditions of fact as well as rules of law, and a concrete notion of a private legal right, interest or liability is not readily separated from the facts on which it depends. Such mistakes may therefore be, and frequently are, properly considered as mistakes of fact. There is no fact relating to private rights, interests, estates or liabilities that does not more or less involve rules of law, as where A proves that he is the owner of certain real estate. Such is proved as a fact, yet this fact rests upon the law relating to the sufficiency of the conveyance, the competency of the grantor to convey, and in some instances the form of the instrument, but A does not the less prove a fact because that fact involves some relation of law. To say that be-

cause it involves a legal relation it is not a fact would seem to arise from a confusion of ideas. One may be ignorant or mistaken as to his own antecedent legal existing rights, interests, duties or liabilities though he accurately understands the legal scope of the transaction into which he enters and its effect upon his rights and liabilities. There are many well considered decisions in which relief has been awarded against mistakes pure and simple of this character though not always based on the ground that equity will relieve against a mistake of law. (2 Pomeroy's Eq. Jur.— 3d ed.—sec. 849; *Eaglesfield* v. *Marquis of Londonderry*, L. R. 4 Ch. Div. 693; *Geib* v. *Reynolds*, 35 Minn. 331; *Renard* v. *Clink*, 91 Mich. 1, 51 N. W. 692; *Livingstone* v. *Murphy*, 72 N. E. (Mass.) 1012.) Lord Westbury in *Cooper* v. *Phipps*, L. R. 2 H. L. 149, said: "Private right of ownership is a matter of fact. It may be the result, also, of matters of law, but if parties contract under a mutual mistake and misapprehension as to the relative and respective rights the result is that that agreement is liable to be set aside as having proceeded upon a common mistake."

The general rule that relief may not be had in equity against mistakes of law has by no means been invariably applied in this country nor in England. Where injustice would be done by its enforcement such injustice has been avoided by declaring that a mistake such as to the title to property or the existence of a certain particular right, though caused by an erroneous idea as to the legal effect of a deed or of duties or obligations created by an agreement, was really a mistake of fact and not strictly one of law and so did not constitute an insuperable bar to relief. (*Reggio* v. *Warren*, 72 N. E. (Mass.) 805; *Wilcox* v. *Lucas*, 121 Mass. 21; *Blakeman* v. *Blakeman*, 39 Conn. 320.) The distinction between ignorance or mistake as to a general rule of law prescribing conduct and a mistake as to private rights or interests of a party to a written instrument has frequently been drawn. It has also been said

that there is no established rule forbidding the giving of relief in any case to one injured by reason of a mistake of law, but that whenever it is clearly shown that parties in their dealings with each other have acted under a common mistake of law and the party injured thereby can be relieved without doing injury to others, equity will afford him redress. *Freichnect* v. *Meyer*, 39 N. J. Eq. 551; *Hausbrandt* v. *Hofler*, 117 Iowa, 103; *Snell* v. *Insurance Co.* 98 U. S. 85.

The important question in cases of this character is not whether the particular mistake was one of law or of fact but whether it was such as a court of equity will correct. (*Dinwiddie* v. *Self*, 145 Ill. 290; *Park Bros. Co.* v. *Blodgett & Clapp Co.* 64 Conn. 28; *Reggio* v. *Warren*, *supra*.) Pomeroy, in his Equity Jurisprudence, (vol. 2, 3d ed. sec. 849,) formulates a general rule based upon justice and principle and supported by numerous decisions, which simply defines the extent of equity jurisprudence to relieve in cases of mistake. It is as follows: "Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities or other relation, either of property or contract or personal status, and enters into some transaction the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests or relations or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact." This rule finds support in our own decisions. (*Moore* v. *Shook*, *supra*, and cases cited.) Other courts supporting that rule are *Cooper* v. *Phipps, supra; Livingstone* v. *Murphy, supra; Benson* v. *Bunting*, 127 Cal. 532; *Renard* v. *Clink, supra; Eustis Manf. Co.* v. *Saco Brick Co.* 198 Mass. 212; *Rauen* v. *Prudential Ins. Co.* 129 Iowa, 725; *Healy* v. *Healy*, 76

N. H. 504; *In re McFarlin,* 9 Del. Ch. 430; *Jeakins* v. *Frazier,* 64 Kan. 267.

In this case it cannot be doubted that Mary Peter, the widow, mistakenly thought her husband competent to make the conveyances which he attempted to make to her. She understood that by such conveyances there would be created in her the right of ownership in this property. This is evidenced by the fact that she took possession of it and continued in the enjoyment thereof until the time of her death. The mistake being established and the equities of the case favoring relief against that mistake, it remains only to determine whether appellants are entitled to the benefit of that relief. We are of the opinion that they are. They stand in her stead, and the property vested in her by will was properly vested by her will in her devisees.

Nor do we discover any invalidity in the probate of the will of John Peter, Sr., at the time the court probated it, if that question be open here. Under section 2 of the Administration act (Smith's Stat. 1929, p. 77,) it is the duty of any person knowing he has been named as executor of the last will and testament of any deceased person, to cause the will to be proved of record within thirty days of the decease of the testator or to present the will to the court. In this case the executrix filed the will in the probate court with her petition to probate the same. Under her mistaken belief that the deeds from her husband were good and that it was not necessary to proceed further with the administration of the estate she later filed a petition to withdraw such administration. That act, however, did not relieve her or the court of the duty, under the law, to proceed with the probate of the will. The will remained on file in the probate court until it was actually probated. The failure on the part of the widow and the court to proceed with the probate of the will did not affect its validity nor destroy the jurisdiction of the court to admit it to probate on proper

proof. The statute does not limit the time in which a will must be probated. (*Oliver* v. *Oliver,* 313 Ill. 612; *Rebhan* v. *Mueller,* 114 id. 343.) It may be further observed that prior to the probate of this will by the court notice was issued to all the heirs of John Peter, Sr., as required by statute. On probate being ordered one of appellees appealed to the circuit court. This appeal, however, was dismissed. No bill was filed to contest the will and it by lapse of time became in law a validly probated will, free from collateral attack as here attempted. *Oakman* v. *Small,* 282 Ill. 360; *Miller* v. *Rowan,* 251 id. 344.

It is also argued that since the widow died before the will was actually probated it cannot be determined that she consented to take under it. While the will was probated after the commencement of this suit, it, when probated, spoke as of the death of the testator. There being, as we have seen, no act on the part of the widow evidencing a refusal on her part to take under the devise, the property, in the eyes of the law, vested in her at the time of the testator's death. *Crooker* v. *McArdle,* 332 Ill. 27; *Rebhan* v. *Mueller, supra; Hicks* v. *Deemer,* 187 Ill. 164.

The order admitting the will of John Peter, Sr., to probate remains a valid order, and a certified copy thereof is admissible in evidence in this cause as a link in the chain of title to the property. By the will of Mary Peter title to her real estate passed to appellants William H. Peter and Idella Sullivan, subject to the lien of the mortgages.

The decree of the city court of East St. Louis was erroneous and is reversed and the cause remanded to that court, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*