(No. 29876.-

ARNOLD SCHLACHTER, Appellant, *vs.* FRANK SCHLACHTER *et al.,* Appellees.

*Opinion filed January 22, 1947.*

ERNEST KENTWORTZ, (G. A. BURESH, of counsel,) both of Chicago, for appellant.

EDWARD T. HOWE, of Chicago, for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook county sustaining a motion for a directed verdict dismissing the complaint of appellant for want of equity, and a decree thereafter entered finding the instrument in question to be the last will and testament of Sophie Schlachter, deceased. Inasmuch as a decree sustaining the position of the appellant would involve a freehold, the appeal is taken directly to this court.

The complaint, filed on February 7, 1945, set forth that Sophie Schlachter died December 19, 1943, leaving as her only heirs the appellant, Arnold Schlachter, and appellee Frank Schlachter, her sons; that decedent was a resident of Cook county owning real and personal estate valued at more than $10,000 and that on July 5, 1939, she executed an instrument in writing purporting to be her last will, which document was admitted to probate in the probate court of Cook county on May 8, 1944. Both ap-

pellant and his brother, Frank Schlachter, referred to herein as appellee, were named beneficiaries therein. The complaint alleges that, at the time of the alleged making of the instrument, the decedent was an invalid and was under the undue influence, domination and control of the appellee, Frank Schlachter, which deprived her of her free agency and destroyed the freedom of her will; that the appellee before and at the time of and since the making of the instrument managed the real estate and other business affairs of the decedent and maintained a close confidential relationship with her whereby she reposed great confidence in him and that appellee had acquired such domination and control over his mother that she yielded to the persuasions and demands of him and that, while she was under such influence, he procured the execution of the will; that the appellee procured the signing of the instrument in furtherance of a scheme to acquire the property and estate for himself by causing one of his sons to be named as the principal and residuary legatee and devisee; that this instrument was never acknowledged by the decedent to be her act and that it was not duly attested or signed by two competent witnesses in her presence or at her request.

The will, a copy of which was attached to the complaint, after directing all just debts and expenses be paid, gave, devised and bequeathed to the appellant the sum of $1 and directed that judgment notes in the amount of $4000 and $2500, each signed by appellant, should be cancelled and delivered to him as his share of the estate. The appellee received $10 and was appointed executor of the will while the rest, residue and remainder of the estate, both real and personal, went to the grandson, Harry Schlachter, a son of the appellee. The will was witnessed by three persons and dated July 5, 1939.

The answer of appellee admitted the death of Sophie Schlachter; that she was a resident of Cook county and

at her death owned real and personal estate valued at more than $10,000; that she executed the instrument in question and that the appellant and appellee were named beneficiaries in the instrument. All other allegations of the complaint were denied. The hearing on the cause was held on May 6, 1946, and on that date the defendant's motion for a directed verdict was allowed, with an instruction that the jury find the document in question was, in fact, the last will and testament of Sophie Schlachter, and a verdict of the jury so finding was filed. On May 10, 1946, a motion for a new trial in writing was made by the appellant and on the same date the court entered an order denying and overruling said motion. On June 4, 1946, a decree was entered in the cause in accordance with the jury finding.

At the hearing, the appellee Frank Schlachter, was called by the plaintiff for cross-examination as an adverse witness under section 60 of the Civil Practice Act. He testified that the property of the deceased consisted of one three-flat building and one two-flat building, both of which were occupied; that the decedent was 75 years old when she died and that while, in the last couple of years before she passed away, the physical condition of his mother was not good, she was still able to get around the house with a cane. He further testified that in 1939, she suffered from arthritis to some extent but was able to go outside the house. He further states that his mother had approached him about making a will in 1939, that he had gone to the Lakeview Bank to ascertain who could draw a will for his mother and had been told that one Zeller who was in the real-estate business could handle the matter for him. He thereupon took his mother to the real-estate office where she discussed with Zeller some notations she had made as to what she wanted in the will. Two weeks later, in accordance with instructions from Zeller, he took

his mother back to Zeller's office where she signed the will and had her signature witnessed by three witnesses. He further stated that his brother had borrowed money from his mother in the amount of the notes set forth in the will and that she had to mortgage her own property in order to give him. the $2500 sum; that in 1943 he asked his mother to sign an extension agreement on the mortgage and that in July, 1943, he went to her flat with Zeller and obtained her signature on the extension agreement and notes. He did not know who actually had drawn the will.

Both appellant and his wife attempted to testify in support of the appellant's claim but objections to their competency to testify were sustained. The only other witness appearing for the appellant was his stepdaughter, Ruth Mayer, who testified that she lived with appellant from 1938 to 1945. From 1938 until she passed away in December of 1943, the deceased lived with appellant in this flat. This witness testified that from 1938 on deceased was suffering from arthritis and was not able to walk without a cane, that in the beginning of 1940 she used both a crutch and a cane and that she never left the house since May of 1939. She further testified that in 1939 she was thirteen years old and was attending school. In 1943 she was working and away from home except at such times as she would be home because of illness. She stated that in July of 1943, while she was home, appellee and Zeller came to the apartment to visit deceased; that because she was not dressed, she removed to the back bedroom where she stood with the door open while the appellee talked to deceased. She testified that he obtained his mother's signature on a mortgage and that appellee then handed his mother another sheet of paper and said: "Well, how about signing the testament, Ma," and that deceased said she did not understand the testament; that appellee then said: "No, Mom, you sign right here," and turned the paper

back, and that deceased signed the paper; that appellee then said that Zeller spoke German and would explain the paper but that no explanation was made and that appellee then picked up the paper and walked out. She further testified that she could not read the paper but might be able to identify it, as one of the papers signed was printed and one was typewritten. She further stated that her uncle had a key to his brother's apartment and would visit the deceased almost daily to inquire after her health.

The appellant contends that the trial court erred in directing a verdict for the appellee at the close of the appellant's case, and cites in support thereof the cases of *Milne* v. *McFadden,* 385 Ill. 11; *Peters* v. *Peters,* 376 Ill. 237; *Hunt* v. *Vermillion County Children's Home,* 381 Ill. 29; *Geiger* v. *Geiger,* 247 Ill. 629. The proof in the present case does not measure up with or approach the testimony considered in any of the cases cited. All of those cases enunciate the well-settled rule in this State that when a court, hearing a will-contest case, is asked to direct a verdict for the proponents, the evidence must be considered in its aspect most favorable to contestants, allowing for all reasonable presumptions and inferences that may be drawn therefrom, and from such considerations the court must determine whether it tends to establish contestant's case on the issue submitted to the jury. This court has discussed this rule in many cases. In *Knudson* v. *Knudson,* 382 Ill. 492, this court said: "The test of the existence of the right to have the cause submitted to a jury, as recognized in this State, is whether there is evidence in the record which, with all its reasonable inferences, taken at the aspect most favorable to the contestant, may be said to be sufficient in law to support the cause of action." In *Ginsberg* v. *Ginsberg,* 361 Ill. 499, this court further held that the contestant of the will has the burden of proving undue influence and the fact that

a fiduciary relation exists between the testator and the beneficiaries of his will is not sufficient, alone, to establish such a charge. We further said in the *Ginsberg case:* "Undue influence that will void a will must be directly connected with the execution of the instrument itself and must be operating when the will is made." Under the holding in the *Ginsberg case,* it cannot be said that the facts that Frank Schlachter was managing decedent's business affairs, that he had a key to her apartment, and that he called on her almost daily to inquire as to her health were sufficient proof of undue influence to go to the jury.

Nor do we find that the evidence of Ruth Mayer, the only witness for the appellant, aside from the appellee, meets the requirements of the rule concerning directed verdicts in will-contest cases. Taking this evidence in its aspect most favorable to contestants and allowing for all reasonable presumptions and inferences that may be drawn therefrom, we do not find that it tends to establish contestant's case. In the case of *Lewis* v. *Deamude,* 376 Ill. 219, it was stated, "It has long been held that unequal bequests to heirs, or bequests to strangers to the exclusion of heirs, will be upheld, and are no grounds, in themselves, to annul a will." It is to be noted that the will was admitted to probate on May 8, 1944, and that on the same day letters testamentary issued to the appellee and that no appeal was taken from said probate. The will was witnessed by three different individuals, who must have testified when the will was probated but who were not called at the trial of this cause because of the directed verdict.

For the reasons stated, the decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*