*In re* ESTATE OF SAVERIO ARIOLA, SR., Deceased.—(PHILIP ARIOLA *et al.*, Petitioners-Appellees, *v.* SAM ARIOLA, JR., *et al.*, Respondents-Appellants.)

First District (5th Division)   No. 78-665

Opinion filed February 9, 1979.—Modified on denial of rehearing March 16, 1979.

Richard J. Short, of Chicago, for appellants.

Hoffman & Davis, of Chicago (Maurice L. Davis and Robert G. Higgins, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Respondent, Sam Ariola, Jr. (proponent), appeals from an order denying his motion to vacate the summary judgment of November 14, 1977, which declared the will of Saverio Ariola, Sr. (testator), null and void because it was procured by proponent's undue influence. It appears that a similar will contest is being pursued in Florida realty. Because of the effect an unfavorable judgment in Cook County would have in the Florida proceeding, proponent appeals the denial of his motion to vacate the summary judgment. Proponent raises three issues on appeal: (1) whether summary judgment was proper; (2) whether his answer to the motion for summary judgment was properly stricken; and (3) whether the court properly denied his motion to amend the petition for probate and the petition to dismiss probate.

We affirm in part, reverse in part, and remand. The pertinent facts are as follows.

Saverio Ariola, Sr., died on December 24, 1975, in Cook County, survived by seven adult children, one of whom died on March 14, 1976. On December 28, 1976, proponent, the youngest child of the decedent, filed a petition for probate of his father's will. This will devised realty located at 808 North 23rd Avenue in Melrose Park, Illinois, to the seven children of testator or to those surviving him. It also devised a 20-arce parcel located in Fort Lauderdale, Florida, and all the rest and residue of his estate to proponent or to his sister, Josephine Ariola, if proponent predeceased testator. It appears from the record that the Florida realty was worth approximately $200,000 and nearly constituted the entire probate estate.

This will was admitted to probate on January 31, 1977, and proponent was appointed executor of the estate. On July 19, 1977, four of testator's children, Philip Ariola, Anna Eboli, Mary DeChiaro and Antonette DiLillo (hereafter contestants), filed a petition to contest the validity of the will. Contestants claim that the will was drafted and prepared by Sidney Tarkoff, an attorney who had represented proponent in previous business matters. Proponent was allegedly the only person who communicated with Tarkoff regarding the testamentary dispositions of the will, and testator had never spoken to Tarkoff regarding the will until he signed it on November 9, 1964. It was alleged that the will was executed in Tarkoff's office and had been completely prepared before testator arrived, except for minor additions. The petition further alleged testator was 85 years old when he signed the will and could not read or write or speak or understand English; that proponent explained the provisions to his father in Italian, since Tarkoff spoke no Italian; after the will was executed, Tarkoff gave the will to proponent who paid the fee; that proponent procured the execution of the will through an abuse of the special trust and confidence reposed in proponent and through the exercise of undue influence; and that the will was not the free and voluntary act of the testator.

The petition also stated that the Melrose Park property had been held in joint tenancy between testator and his seven children since 1950, and that it passed by survivorship and was not subject to probate under the will.

Proponent filed an answer and a jury demand. In his answer he denied that he engaged Tarkoff to prepare the will, that he supplied the information to Tarkoff, that his father could not speak English, and that his father had a special trust in him. He also generally denied all allegations of undue influence. As an affirmative matter he alleged that the joint tenancy in the Melrose Park property had been created by fraud;

that he brought a separate action to set aside the 1950 deed because of fraud or in the alternative for a partition of the property; and that his suit to set the deed aside was dismissed but the partition was allowed.

In answers to interrogatories proponent again denied that he supplied any information or directions to Tarkoff about the beneficiaries or disposition of his father's property and stated that testator had told Tarkoff his testamentary plan.

The contestants moved for summary judgment attaching the discovery depositions of proponent and Tarkoff. The motion included the verified affidavit of the attorney who took the depositions.

The depositions of Tarkoff described the circumstances surrounding the drafting and execution of the will, relevant portions of which follow:

"Q Who first communicated with you with respect to the preparation of the document?

A Sam Ariola, Jr.

Q And who gave you directions as to the provisions to be included in the Will?

A Sam Ariola. Sam Ariola, Jr.

* * *

Q Did anyone besides Sam Ariola, Jr., give you any information or directions as to the provisions to be included in the Will?

A No.

Q Then would it be correct to say that Sam Ariola, Jr., was the only person who instructed you as to the provisions of the Will of which you have a copy before you as Exhibit 2?

A Yes.

Q Did Sam Ariola, Jr., in the directions he gave you, furnish the address on some property, a twenty-eight-tract, in Florida, which is described in the Will?

A Yes. I received the information from him.

Q And did he also tell you that he was to be beneficiary of this property under the Will?

A Yes.

* * *

Q Did Sam Ariola, Jr., and his father Saverio Ariola, come to your office together on November 9, 1964?

A Yes, they did.

Q And at that time was the Will prepared in its own entirety, already typed, that is, except for the phrase in the top line: 'Also known as Saverio Ariola'—

A Yes.

Q —and except for the date, the Ninth Day of November, 1964?

A Let me see the date on that (indicating). I believe so, yes.

* * *

Q Did you at any time hand the original of the Will or any copy of it to Saverio Ariola for him to read?

A I don't believe so.

Q Did you read the Will aloud to Saverio Ariola?

A I started to read it. And then Sam—Apparently, either the father couldn't get through to him, and so, Sam read it in Italian to him, in Italian, apparently.

And when he got through, and I looked at the father and I said: 'Okay?'

'Okay.'

And then I said: 'Sign it.'

And so, he signed it.

Q Did you read the Will aloud to either Sam Ariola, Jr., or to Saverio Ariola, the father?

A I went over it with Sam.

Q Did you discuss the Will with Sam?

A Yes.

Q And after you had concluded your discussion of the Will with Sam, did he then talk to the father?

A Yes. Then he talked to the father.

Q And in what language?

A In Italian.

Q Did you understand what he said?

A No, no. I can understand some of the phrases. But I do not make out that, not what they were saying.

Q But you didn't understand what Sam said to his father?

A No, no; absolutely not.

Q Did the father make any statement to Sam, direct?

A There was some, but I can't recall, now, how much, now.

Q But it was in Italian?

A Yes.

Q And you didn't understand?

A No; no, I didn't.

Q Did the father Saverio Ariola look at the Will, at the body of the Will, at the time then after you read it and during the time that he was in the office?

A I don't believe so.

Q Who indicated to him where he was to sign?

A I did.

Q Did he at the time he signed, but before he signed it, look at the content of the Will or at the body of the Will?

A I had handed it, you know, like to him; and then this, he gave it to Sam. And finally, then, Sam gave it to me.

And when I said, 'Okay,' you know, 'Okay?' and he said, 'Yeah,' and then I said, 'Here, sign here.' "

Relevant portions of proponent's deposition are as follows:

"Q Well, the will was already prepared at the time you reached Mr. Tarkoff's office that day?

A I don't remember that part, whether it was already prepared or whether he prepared it while he was telling us what to put in.

\* \* \*

Q Did you see Mr. Tarkoff type the will or have a stenographer or secretary type the will that day?

A I saw him do the typing.

Q Of the whole will that day?

A I don't know if it was the whole will or not.

\* \* \*

Q So that Mr. Tarkoff before the meeting of November 9, 1964, was not told by anyone what was to be in your father's will, is that right?

A Well, I don't recall even telling him about the will. All I told him about was that my father wanted to make up a will.

Q And that is all?

A I didn't tell him what was in the will or what was going to be in the will or nothing like that.

Q Therefore, the first time Mr. Tarkoff was told what was to be in your father's will was on November 9, 1964, is that right?

A That's correct.

Q In Mr. Tarkoff's law office?

A Correct.

Q Who told Mr. Tarkoff what was to be in your father's will, you or your father?

A My father.

Q Did he speak to Mr. Tarkoff in English?

A Broken English and as much as he could relate to him.

Q I would like you to tell me as nearly as you can recall just what it was that your father told Mr. Tarkoff on November 9, 1964, in respect of what were to be the provisions of the will. Just tell me in your own words what your father said to Mr. Tarkoff.

A He told Mr. Tarkoff that he wanted me to have the twenty acres located at 5850 South State Road No. 7 in Fort Lauderdale, and also the home that is adjoining the property, and also naming me executor of the estate in Melrose Park at 818 North 23rd Avenue, Melrose Park, and he wanted all the persons involved,

children in the will, and the last survivor would get the home in Melrose Park. But the property in Fort Lauderdale would go to me.

Q And you heard your father tell that to Mr. Tarkoff?

A Yes, sir.

Q Did you interpret to Mr. Tarkoff what your father said to him?

A Well, I think Mr. Tarkoff understood it."

Later in the deposition the question of payment of Tarkoff's fee for the will was raised:

"Q Well, at any rate, did you make whatever payment there was?

A Oh, yes, if there was any payment made I made it. I took care of all of my father's bills.

Q You didn't get reimbursed by your father for paying his bills?

A No member of the family even asked me for reimbursement.

Q So this payment by you of a fee for drawing your father's will was a contribution by you?

A Well, I was his son. No one else in the family bothered with him. He was mistreated and everything else, and he trusted no one but me, and wouldn't sign any papers but in my presence."

Proponent filed an unsworn answer to the motion for summary judgment, alleging a number of fact issues including among others:

"a. There is a conflict in the deposition testimony of SIDNEY R. TARKOFF and SAM ARIOLA JR. in a number of instances, more particularly in regard to the disputed issue of whether the Will was prepared in advance.

b. There is a genuine issue of fact whether SAM ARIOLA 'directed' S. TARKOFF to prepare the Will prior to the office meeting.

c. There is a genuine issue of fact whether SAM ARIOLA 'furnished' a description of assets in advance of the office meeting.

d. There is a genuine issue of fact whether SAM ARIOLA 'instructed' S. TARKOFF as to the disposition of assets in advance.

e. There is a genuine issue of fact as to whether SAM ARIOLA JR. gave 'directions' to provide for the disposition of Florida property, as to its 'passing' to SAM ARIOLA JR.

f. There is a genuine issue of fact as to whether SAM ARIOLA JR. brought the decedent to S. TARKOFF'S office to have the Will prepared and signed for the purpose of having decedent sign a Will already in existence."

In addition, the attorney for proponent filed an affidavit listing 12 witnesses who could testify that the testator spoke and understood both Italian and English. A second affidavit mentioned depositions taken in

Florida concerning the physical and mental capacities of the testator. The answer and two affidavits were stricken pursuant to contestants' motion. Proponent filed no further pleadings and summary judgment was entered November 14, 1977, declaring the will invalid because it had been procured through the undue influence of proponent.

On December 12, 1977, proponent filed a motion to vacate the summary judgment. In this pleading he maintained "* * * that while the affidavits of the contestants established a prima facie charge of undue influence, the respondent [proponent] should be given an opportunity to prove his freedom from fraud * * *." He stated that: "The disputed facts are whether the respondent [proponent] gave directions to the attorney *contrary* to the decedents [*sic*] instructions; whether the decedent *understood* the contents of the Will, and this necessarily involves the decedents [*sic*] language capacity." (Emphasis theirs.) Attached to the motion were transcripts of testimony of witnesses in the Florida probate proceeding. The contestants moved to strike the transcript but the trial court did not rule on this motion.

On November 3, 1977, prior to the summary judgment, proponent filed a petition to set aside the admission of the will in Illinois, to be discharged as executor, and to close the estate. He alleged that: the lot in Melrose Park was the only asset involved in the Illinois probate while the vast majority of the estate was governed by the Florida probate proceeding; he learned of the joint tenancy after he filed the will in Cook County and there had since been a partition of the property; since all of the Illinois property had been distributed, there was no need to determine the validity of the will in Illinois; and proponent sought to have the will contest considered moot.

An answer to this petition was filed November 10, 1977, and alleged that testator had his residence and domicile in Illinois at death and that principal administration of his estate was properly in Illinois. In addition, that testator left personal property in value of about $1000 in Illinois subject to the Illinois proceedings; that proponent had been aware of the joint tenancy of the Melrose Park property when he filed the will; and that since most witnesses to the will contest were in Cook County, the trial would be most convenient in Illinois.

Proponent also attempted to amend the petition for probate to state that testator's residence at death was Fort Lauderdale, Florida and that he had no real or personal property in Illinois subject to probate.

An order was entered on January 12, 1978, which denied respondent's motion to vacate the summary judgment, denied the petition to close the estate, and denied the motion to amend the petition for probate. Proponent appeals from this order.

Opinion

## I.

■■ Proponent first contends that the denial of his motion to vacate the order of summary judgment was improper. While a will contest is a special statutory proceeding, section 1—6 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 1—6) provides that the rules of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, pars. 1 through 93) apply to all proceedings under the Probate Act, with certain exceptions not pertinent here. See *Peters v. Catt* (1958), 15 Ill. 2d 255, 259, 154 N.E.2d 280; *Mitchell v. Van Scoyk* (1953), 1 Ill. 2d 160, 167, 115 N.E.2d 226.

Section 57(3) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57(3)) provides that summary judgment is appropriate "* * * if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is proper when the issue is determinable solely as a matter of law. *Sidwell v. Sidwell* (1975), 28 Ill. App. 3d 580, 328 N.E.2d 595; *Applicolor, Inc. v. Surface Combustion Corp.* (1966), 77 Ill. App. 2d 260, 222 N.E.2d 168.

■■ In ruling on a motion for summary judgment, the trial court must construe the pleadings, depositions and affidavits included therein most strictly against the moving party and most liberally in favor of the opponent. (*Harris Trust & Savings Bank v. Joanna-Western Mills Co.* (1977), 53 Ill. App. 3d 542, 368 N.E.2d 629; *Lumbermens Mutual Casualty Co. v. Poths* (1968), 104 Ill. App. 2d 80, 243 N.E.2d 40.) Inferences may be drawn from the facts which are not in dispute, and if fair-minded persons could draw different inferences from these facts, then a triable issue exists. (*Harris Trust & Savings Bank v. Joanna-Western Mills Co.*; *McHenry Sand & Gravel, Inc. v. Rueck* (1975), 28 Ill. App. 3d 460, 328 N.E.2d 679.) In sum, the right of a party to summary judgment must be clear and free from doubt. *McHenry Sand & Gravel, Inc. v. Rueck*; *Dakovitz v. Arrow Road Construction Co.* (1975), 26 Ill. App. 3d 56, 324 N.E.2d 444.

Application of the foregoing principles in the instant case requires that the trial court's entry of summary judgment in favor of the contestants be reversed, and the cause be remanded for a trial on the merits. In our view, a triable issue of fact exists concerning the alleged procurement of the will through the undue influence of proponent.

In support of their motion for summary judgment, contestants recited portions of attorney Tarkoff's and proponent's depositions and concluded that such testimony made out a prima facie showing of undue influence. Since proponent's answer was stricken, they assert that this

presumption, being unrebutted, established undue influence as a matter of law.

Putting aside for the moment the correctness of striking proponent's answer to the motion for summary judgment, there appears to be a question of fact presented by the contestants' own motion and supporting documents as to whether proponent procured the will.

Tarkoff's deposition set forth that proponent first contacted him concerning the will and that proponent was the only person to supply information concerning its provisions; that when testator arrived to execute the will, he was accompanied by proponent and only had to sign the will; and that only proponent could then communicate with the testator concerning the contents of the will because of the language problem.

However, proponent in his deposition, also presented by contestants, testified that he did not tell Tarkoff what was to be included in the will but merely that his father wanted a will; that testator told Tarkoff what he wanted in the will for the first time on November 9, 1964, the day the will was executed; and that proponent did not remember whether the will was already prepared or then prepared but did see Tarkoff typing on the will on November 9.

■■ The undue influence which will invalidate a will must be directly connected with the procurement and execution of the will and must be operative at the time it is made. (*Peters v. Catt* (1958), 15 Ill. 2d 255, 263, 154 N.E.2d 280; *Ginsberg v. Ginsberg* (1935), 361 Ill. 499, 510, 198 N.E. 432.) The influence must be specifically directed at procuring the will in favor of a particular party and must be such as to destroy the testator's will and render the instrument more the will of another than that of the person executing the document. *Redmond v. Steele* (1955), 5 Ill. 2d 602, 126 N.E.2d 619; *Lake v. Seiffert* (1951), 410 Ill. 444, 102 N.E.2d 294.

■■ In certain circumstances a presumption that the will is the result of undue influence will arise. To raise this presumption, the contestant must prove the following elements: (1) that a fiduciary relationship exists between the testator and a legatee or devisee who receives a substantial benefit from the will; (2) that the testator is the dependent party and the devisee or legatee is the dominant party; (3) that the testator reposes trust and confidence in the devisee or legatee; and (4) that the will is prepared by or its preparation procured by such devisee or legatee. *Swenson v. Wintercorn* (1968), 92 Ill. App. 2d 88, 234 N.E.2d 91; *Herbolsheimer v. Herbolsheimer* (1977), 46 Ill. App. 3d 563, 361 N.E.2d 134.

■■ Although the first three elements are established, we feel that due to the conflicting testimony as to who supplied the information to Tarkoff and when the will was prepared raises a genuine issue of fact whether proponent procured the will. Viewing the testimony in a light most

favorable to him and most strictly against the contestants, it would appear that testator had decided on the dispositive plan, had communicated it to Tarkoff and because of the special trust he maintained for proponent, had left the bulk of the estate to him. In that light, proponent merely took his father to an attorney to have a will drafted and did not procure the will, or substitute his own will for that of the testator. Under these circumstances, the contestants' right to summary judgment is not free and clear from doubt. What activity constitutes procurement is a question of fact and where, as here, a jury has been requested, that question should be decided by a jury.

■■ ■ The contestants maintain that the statement made in proponent's motion to vacate the summary judgment that the affidavits of contestants established a prima facie charge of undue influence is an admission that binds him. While a judicial admission is generally binding on a party (*Rosbottom v. Hensley* (1965), 61 Ill. App. 2d 198, 209 N.E.2d 655; *Bartolomucci v. Clarke* (1965), 60 Ill. App. 2d 229, 208 N.E.2d 616), where admissions are made improvidently by the attorney drawing the pleading on a misunderstanding of the facts, the admission should not conclusively bind the client. (See *Dwyer v. Dwyer* (1932), 265 Ill. App. 155; *Higgins v. Atchison, Topeka & Santa Fe Ry. Co.* (1965), 57 Ill. App. 2d 254, 205 N.E.2d 648.) This is especially appropriate where the admission involves a question of law, *i.e.*, whether a prima facie case of undue influence had been established. Such an admission will not preclude this court from its own determination of whether an unrebutted prima facie case has been established. We therefore conclude that the instant admission is not binding on proponent. Since a triable issue exists, the granting of summary judgment was error. Accordingly, the proponent's motion to vacate the summary judgment should have been granted.

## II.

Proponent next contends that the trial court erred in striking his answer and supporting affidavits to the motion for summary judgment. In view of our determination that summary judgment was improperly granted, it is unnecessary to address this issue.

## III.

Proponent next contends that the trial court erred in denying his petition to set aside the admission of the will and dismiss probate, and his further motion to amend the petition for probate. Although not cited by proponent, the cases of *Hitchcock v. Green* (1908), 235 Ill. 298, 85 N.E. 238, and *King v. Westervelt* (1918), 284 Ill. 401, 120 N.E. 241, would appear to lend support to his position. The *Hitchcock* case dealt specifically with the issue of whether "a petitioner for the probate of a will

may dismiss his petition against the objection of a party contesting the probate." (*Hitchcock*, at 299.) In that case, the will was admitted to probate in the county court but an heir contested the will in the circuit court which again admitted the will to probate. The supreme court reversed. After a hearing upon remand, the circuit court intimated a decision adverse to probate of the will. Prior to any order, proponent's motion to dismiss his petition for probate was allowed over objections. The appellate and supreme court then affirmed.

The supreme court in *Hitchcock* noted that because of the notice provisions of the Act of 1897, in relation to the probate of wills (Hurd's Stat. 1897, ch. 148, par. 21), the proceedings for probate, in all stages, is in the nature of a proceeding *inter partes*. The proponent, therefore, had a right to control his own petition and to dismiss it whenever he chose. The supreme court held, "But the appellee [proponent] had the right, in his own discretion, to abandon the cause and dismiss his petition, even against the objection and protest of his adversary." (*Hitchcock*, at 300.) This reasoning was followed in *King v. Westervelt* (1918), 284 Ill. 401, 403, 120 N.E. 241, where the supreme court stated that an executor "has such an interest as authorizes him, over the objection of those resisting probate, to dismiss a petition filed by him for probate of the will, either in the county court or in the circuit court."

In *Hitchcock*, it should be noted that when the supreme court reversed the circuit court, the order admitting the will to probate was set aside and the cause remanded to the circuit court for proceedings on the petition as if no order had been entered. At that point, no adjudication being effective thereon, a proponent should be allowed to withdraw his petition. However, the *King* case, which cited *Hitchcock* with approval, dealt with the question of whether an executor was a person interested in a will for purposes of appeal. It did not deal with dismissal of a petition for probate and does not directly support the right to dismiss.

■■■ Once an order admitting a will to probate has been entered, we do not feel that the proponent should be allowed to dismiss his petition and withdraw the will. A will admitted to probate is *prima facie* valid until set aside. (*In re Estate of MacLeish* (1976), 35 Ill. App. 3d 835, 342 N.E.2d 740; *Sternberg v. St. Louis Union Trust Co.* (1946), 394 Ill. 452, 68 N.E.2d 892.) The order is not final as to the execution or validity of the will. (*Sternberg v. St. Louis Union Trust Co.*) The validity of the will may be challenged in a will contest brought within six months from the admission to probate as provided by statute. (Ill. Rev. Stat. 1977, ch. 110½, par. 8— 1.) If no such contest is brought, the will is valid for all purposes upon its admission to probate. *Sternberg v. St. Louis Union Trust Co.*

■■■ As executor of the will, proponent had a duty either to petition to admit the will to probate or to refuse to act as executor. (Ill. Rev. Stat.

1977, ch. 110½, par. 6—3(a).) If he refused to submit the will to probate, the court could on its own motion compel the production of the will. (Ill. Rev. Stat. 1977, ch. 110½, par. 6—1(a).) Moreover, once the will has been admitted to probate making it presumptively valid, the executor could not withdraw the will and prevent the court from proceeding with the administration of the estate or determining the will's validity through the will contest. Proponent's refusal to act as executor or the dismissal of his petition could not prevent the court from probating the will. See *Peter v. Peter* (1931), 343 Ill. 493, 175 N.E. 846.

■■ Although a will contest has been brought, that does not invalidate the order admitting the will to probate or change the *prima facie* showing of validity. (*In re Estate of MacLeish* (1976), 35 Ill. App. 3d 835, 342 N.E.2d 740; *Sternberg v. St. Louis Union Trust Co.* (1946), 394 Ill. 452, 68 N.E.2d 892.) In a will contest the burden is on the contestant to show the invalidity of the will. (*Schlachter v. Schlachter* (1947), 396 Ill. 184, 71 N.E.2d 153; *In re Estate of Rupinski* (1970), 131 Ill. App. 2d 393, 266 N.E.2d 190; Ill. Rev. Stat. 1977, ch. 110½, par. 8—3.) The contestants in the instant case should be allowed to proceed with their proof since the will of the testator is presumptively valid and otherwise governs the distribution of his property.

## IV.

Proponent contends that denial of his motion to amend the petition for probate was improper. As already noted, the provisions of the Civil Practice Act apply to probate proceedings. Ill. Rev. Stat. 1975, ch. 110½, par. 1—6.

■■ Section 46 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 46) provides for amendments of pleadings. Permission to file an amendment prior to judgment rests within the discretion of the trial court and its rulings will not be disturbed on review unless its discretion has been manifestly abused. (*Mundt v. Ragnar Benson, Inc.* (1975), 61 Ill. 2d 151, 335 N.E.2d 10; *Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1, 280 N.E.2d 437.) Several factors were before the trial court in considering the motion to amend. The purpose of the Probate Act is to permit an administration to get under way as quickly as possible and yet to permit those who wish to question the will an adequate opportunity to test the validity of the will. (*In re Estate of Carr* (1970), 126 Ill. App. 2d 461, 262 N.E.2d 54; *In re Estate of Haines* (1977), 51 Ill. App. 3d 163, 366 N.E.2d 548.) The contestants here have a right to have the validity of the will determined without unnecessary delay. The amendment was an attempt to set aside the admission of the will to probate and to dismiss the probate proceedings in Illinois. This would delay the determination of the validity of the will and would prejudice contestants' right to a reasonably

prompt contest. In addition, proponent could not directly dismiss the proceeding and withdraw the will from probate. The court had acted upon the petition and admitted the will to probate. The order was an adjudication on the petition and denial of the motion to amend it was not an abuse of the trial court's discretion. A pleading may be amended after judgment only to conform the pleadings to the proofs. (Ill. Rev. Stat. 1977, ch. 110, par. 46(3).) Proponent sought to amend his petition for probate after it had been allowed, to change testator's residence at death, and to state that testator had no property in Illinois. However, no proof of these allegations was made, and these allegations were refuted in contestants' answer to proponent's petition to dismiss. Contestants claimed that the testator's residence at death was in Cook County, Illinois, and that more than $1000 worth of the testator's personal property remained in Cook County. Since no proof was made concerning the residence and property of testator, there was no proof with which to make the petition for probate conform. The motion for leave to amend was properly denied. See *Fultz v. Haugan* (1971), 49 Ill. 2d 131, 273 N.E.2d 403.

For the foregoing reasons, the trial court's order denying the motion to vacate the summary judgment is reversed, the order denying proponent's motion to dismiss his petition and his motion to amend his petition is affirmed, and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part; and remanded.

SULLIVAN, P. J., and WILSON, J., concur.