**Joseph KAMINSKY, individually, etc., Plaintiff,**

v.

**CONDELL MEMORIAL HOSPITAL, et al., Defendants.**

**No. 92 C 5298.**

United States District Court, N.D. Illinois, E.D.

March 18, 1993.

Mark G. Adler, Chicago, IL, for plaintiff.

Robert H. Smith, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Joseph Kaminsky ("Joseph"), both individually and as Special Administrator for the Estate of his late wife Helen ("Helen"), has brought a double-barreled malpractice action: against Condell Memorial Hospital ("Condell") for its allegedly negligent handling of Helen while she was a patient there, and against Balkin and Doran, Ltd. ("B & D") and its former associate Mark Adler ("Adler") for their allegedly negligent conduct of the litigation against Condell when they were the lawyers for Helen and then Joseph. All defendants have now opposed Joseph's proposed filing of a Third Amended Complaint ("TAC"),[1] albeit for different reasons:

    1. Condell objects to the TAC's insertion of a wrongful death claim.

    2. Both B & D and Adler want to get out of the action entirely.

With the motions having been fully briefed, this Court grants each of them for the reasons stated in this memorandum opinion and order.

### Facts

Because defendants' attacks target the claimed legal insufficiency of the TAC, the substantive factual allegations in that pleading are accepted as true for present purposes. In brief, Helen was hospitalized at Condell for a routine procedure in early April 1987. During her stay she fell from her bed—the direct result of Condell's failure to supervise and monitor her and to restrain her in a Posey vest. That fall led to her

---

1. This Court's August 7, 1992 memorandum opinion and order was issued sua sponte to point out inadvertent jurisdictional flaws (as well as other deficiencies) in the original Complaint—but of course that opinion granted Joseph leave to replead to cure the jurisdictional defects. When the First Amended Complaint then failed to cure the jurisdictional defects despite the plain roadmap that had been set out in the original opinion, this Court issued another opinion on August 25 that sent Joseph and his lawyers back to the drawing boards. On September 1 the Second Amended Complaint was filed—and though Joseph's lawyers still didn't get the easy requirement for diversity pleading right, diversity was sufficiently established by the pleading's negative allegations so that this Court left well enough alone.

disability and a prolonged stay in a nursing home, where she died on March 13, 1989.

What creates the current problems is not so much the matters affecting Helen—which will have to be sorted out before a jury—but rather the checkered history of this and earlier litigation between the parties, both in the state courts and here. About a week before Helen's death, B & D and their then associate Adler filed suit on her behalf against Condell in the Circuit Court of Lake County (Case No. 89 L 290). After Helen's death Lake County Circuit Court Judge Bernard Drew appointed Joseph as special administrator and authorized the filing of an amended complaint. On that same day (June 1, 1989) B & D filed the Amended Complaint—it substituted Joseph as plaintiff and, in referring to Helen's death to explain the reason for that substitution, its Paragraph 11 said this:

> That on March 13, 1989, the plaintiff, Helen Kaminsky, died of causes unrelated to this incident.

Over two years later (on September 16, 1991) Joseph changed lawyers to the same attorney (Kenneth Chessick) whose firm now represents him before this Court.[2] Three months later Chessick sought to file a Second Amended Complaint inserting a wrongful death claim into the state court action. After that motion had been fully briefed by the parties, on March 11, 1992 Judge Drew denied leave to file because he found that the new claim was untimely under Ill.Rev.Stat. ch. 70, ¶ 2, rejecting Chessick's argument that the wrongful death claim related back to the time of filing of the original Complaint under Ill.Rev.Stat. ch. 110, ¶ 2–616 ("Paragraph 2–616"). Then on April 23, 1992 Judge Drew ordered that the revised Second Amended Complaint that Joseph's lawyers had then tendered (a revision that had omitted the wrongful death claim) still had to retain the already-quoted language negating a causal relationship between Condell's asserted malpractice and Helen's death. Then on April 30 Judge Drew granted Condell's motion to strike the Second Amended Complaint entirely, though with leave to replead.

In May 1992 the case went to trial. But after Judge Drew had ruled on several mo-

tions in limine, Chessick opted instead to move for voluntary dismissal under Ill.Rev. Stat. ch. 110, ¶ 2–1009 ("Paragraph 2–1009"). Judge Drew granted that motion and ordered "the cause dismissed without prejudice, and with leave to refile." At that point Joseph and Chessick moved over to this forum, filing this lawsuit as a diversity action on August 17, 1992.

### Condell's Motion

■ Since this litigation first found its way into this District Court, the error of Judge Drew's decision on the limitations issue has been confirmed by the opinion written by Justice Mary Ann McMorrow for the Illinois Appellate Court for the First District in *Sompolski v. Miller,* 180 Ill.Dec. 932, 608 N.E.2d 54 (1st Dist. Dec. 3).[3] That case involved circumstances on all fours with the situation here—the insertion of a wrongful death claim, more than two years after death, into a timely personal injury lawsuit—and *Sompolski* expressly applied Paragraph 2–616(b) to relate the claim back to the time of original filing. Even though the decision emanated from the First Appellate District, while Lake County is in the Second Appellate District, under Illinois law a trial court in Lake County is bound by an Appellate District decision anywhere in the state (*State Farm Fire & Cas. Co. v. Yapejian,* 152 Ill.2d 533, 539–40, 178 Ill.Dec. 745, 748, 605 N.E.2d 539, 542 (1992)).

Once the specter of a limitations bar had thus been dissipated by *Sompolski,* this Court urged Chessick to consider refiling the lawsuit in the state court, among other reasons to enable Joseph and Chessick to take issue with Judge Drew's treatment of the original allegation about "unrelated causes" as though it were a binding judicial admission. Although that determination appeared to this Court to be clearly wrong as a matter of substantive Illinois law, this Court warned Chessick that it could well be bound by that ruling as a procedural matter (as a state appellate court would not be). Chessick resisted that suggestion and elected to stay

---

**2.** For simplicity, this opinion will use "Chessick" to denote all lawyers acting for that firm, both in the state court and in this District Court.

**3.** *Sompolski* was one of Justice McMorrow's last opinions issued when she occupied the Illinois

Appellate Court bench before her elevation to the Illinois Supreme Court.

here instead, and that decision now proves fatal.[4]

Now Joseph is forced to rely on the simplistic notion that his and his counsel's 1992 decision to seek voluntary dismissal of the state court action somehow wiped the slate totally clean—that "[i]n both Illinois and under the federal rules, a voluntary dismissal is without prejudice and treats the case as if it never existed" (Chessick's Mar. 9, 1993 Mem. [3][5]). But that proposition is supported by neither of the federal cases that Chessick cites (*Morris v. Jenkins*, 819 F.2d 678 (7th Cir.1987) (per curiam) and *Van Kast v. Board of Education*, No. 87 C 2582, 1988 WL 142247, 1988 U.S.Dist. LEXIS 14942 (N.D.Ill. Dec. 27, 1988)), and Chessick cites nothing whatever under Illinois law except for Paragraph 2–1009 (which also says nothing of the sort).

Instead, the controlling Illinois law teaches that exactly the opposite is true in the circumstances involved here—the situation where the voluntary dismissal has followed the issuance of adverse rulings by the trial court. In that situation *Edward E. Gillen Co. v. City of Lake Forest*, 221 Ill.App.3d 5, 9–10, 163 Ill.Dec. 585, 587–88, 581 N.E.2d 739, 741–42 (2d Dist.1991) (incidentally, a case from the same Appellate District that would have taken any appeal from Judge Drew's rulings) has held expressly that a dismissing plaintiff *can* appeal those earlier unfavorable trial court rulings.[6] *Gillen* is so parallel to the present situation that it is worth an extended quotation from that opinion (with citations omitted):

> Lake Forest is correct in stating that as a general rule a plaintiff cannot appeal an order of voluntary dismissal. An order of voluntary dismissal cannot be appealed by the plaintiff since he or she requested the order and thus is protected from prejudice by the statute of limitations which gives the plaintiff the absolute right to refile the action within one year of a voluntary dismissal without prejudice. However, Gillen is not attempting to appeal the order for voluntary dismissal. Rather, Gillen is ask-

ing this court to review the court's dismissal of count IX based upon Lake Forest's motion to dismiss, as well as the court's granting judgment on the pleadings as to all damages relating to the sinking of the tug "Andrew J," which was also based upon a motion made by Lake Forest.

A voluntary dismissal pursuant to section 2–1009 of the Code of Civil Procedure is a final and appealable order, and this court has jurisdiction to consider the merits of these appeals. Until the court entered the order for voluntary dismissal, Gillen could not have appealed the dismissal of count IX of its amended complaint or the judgment on the pleadings as to all damages relating to the sinking of the tugboat absent a special finding that there was no just reason for delaying enforcement or appeal.

\* \* \* \* \* \*

The order voluntarily dismissing the remaining counts disposed of all matters pending before the trial court concerning Gillen's cause of action, and, thus, the previous orders became final and appealable at that time. Accordingly, Lake Forest's argument that this court does not have jurisdiction to hear Gillen's appeal because Gillen voluntarily dismissed its cause of action against the city is meritless.

■ What that means for present purposes is that the decision by Joseph and Chessick to abandon the Illinois litigation rather than to appeal Judge Drew's two adverse rulings—the one in which he rejected the wrongful death claim as barred by limitations and the related one in which he required the Complaint to retain the allegation negating a causal relationship between Condell's negligence and Helen's death—caused those rulings to be set in concrete as the law of the case in the Illinois lawsuit. And that causes those same rulings to be binding on this Court as law of the case, as conclusively demonstrated by the thoughtful discussions in *PaineWebber Inc. v. Farnam*, 870 F.2d 1286, 1290–91 (7th Cir.1989) and *Crigler v.*

---

**4.** This Court shudders at the prospect that Chessick's illadvised stubbornness might presage still another lawyer malpractice suit.

**5.** Chessick has failed to number the pages in that memorandum (why?), thus requiring this Court to do so.

**6.** That is nothing more than a special variant of the familiar doctrine that the entry of a final order in a case triggers the appealability of all previously unappealable interlocutory orders.

Axia, Inc., *735 F.Supp. 868, 871 (N.D.Ill. 1990).*

This Court is therefore not free to reexamine the issue of the viability of the wrongful death claim against Condell. Joseph and Chessick have chosen to make a federal bed of this litigation, and they must lie in it. Hence the motion to file the TAC, with its proposed addition of a wrongful death claim, is denied.

### Balkin & Doran, Ltd.

B & D (though not Adler individually, a matter discussed later) remained Joseph's lawyers for more than two years after Helen's death. Because this Court must make the arguendo assumption for present purposes that due diligence would have led B & D to advance a wrongful death claim within the two-year post-death period, their ability to extricate themselves from this litigation has to rest on proximate cause considerations.

In that respect the relation-back doctrine saves them from exposure. It must be taken as established (as *Sompolski* requires) that the proper pursuit of the claim in the Illinois courts by Chessick would have preserved the wrongful death claim. That being so, B & D cannot be held liable, because of the established doctrine under Illinois case law (*Land v. Greenwood,* 133 Ill.App.3d 537, 88 Ill.Dec. 595, 478 N.E.2d 1203 (4th Dist. 1985) and *Harvey v. Mackay,* 109 Ill.App.3d 582, 65 Ill.Dec. 167, 440 N.E.2d 1022 (1st Dist.1982)) that bars a legal malpractice action where an attorney's involvement in representing his or her client had ended long enough before the running of limitations for the claim to have been timely asserted by the lawyer or lawyers who handled the case thereafter.

As for Judge Drew's insistence that Joseph's later pleadings had to retain the allegation disclaiming a causal relationship between Condell's negligence and Helen's death (thus defeating any wrongful death claim as a matter of law), that ruling flies in the face of equally well-established Illinois law. There are a host of Illinois cases that distinguish between admissions contained in an original *verified* pleading and those included in an *unverified* pleading (the B & D state court Amended Complaint was unverified). *Robins v. Lasky,* 123 Ill.App.3d 194, 198, 78 Ill.Dec. 655, 462 N.E.2d 774, 777 (1st Dist.1984) (citation omitted) is exemplary of those:

> It is a general rule to pleadings that an amendment which is complete in itself, and does not refer to, or adopt, the prior pleadings, ordinarily supersedes it and the prior pleading ceases to be part of the record, being in effect abandoned or withdrawn. In such a case, admissions of a party in the unverified original pleadings may be used as evidentiary admissions, rather than judicial admissions.

Indeed, Chessick had unsuccessfully urged that very proposition on Judge Drew, citing among other cases *Estate of Ariola v. Ariola,* 69 Ill.App.3d 158, 169, 25 Ill.Dec. 388, 396, 386 N.E.2d 862, 870 (1st Dist.1979).

Nothing here suggests that the brief allegation in Paragraph 11 of the Amended Complaint in the state court, which would at worst have gone in as part of the total mix of evidence dealing with the proximate cause issue, would itself have been a proximate cause of Joseph's loss of the wrongful death claim on the merits (if, that is, the claim would have been lost at all). There is no basis for keeping B & D (or Adler) as defendants in this case on so thin a reed. Accordingly they are dismissed from this action.

### Adler

As suggested earlier, Adler has an added ground for dismissal. Even if the relation back doctrine had not preserved the wrongful death claim, it would not have been barred by limitations until March 14, 1991. Because Adler had worked as an associate at the B & D law firm only until August 1, 1989—a date more than 19 months before that March 1991 date—the principle announced in the previously-cited *Land* and *Harvey* cases would require his dismissal even if B & D were forced to remain in the litigation. That, however, would simply add another string to Adler's dismissal bow.

### Conclusion

Joseph is denied leave to file the TAC against Condell. B & D and Adler are dismissed as defendants. Under the teaching of

*National Metalcrafters v. McNeil,* 784 F.2d 817, 820–21 (7th Cir.1986), this Court determines under Fed.R.Civ.P. 54(b) that there is no just reason for delay. It expressly directs the entry of final judgment in favor of B & D and Adler and against Joseph.