EDWARD E. GILLEN COMPANY, Plaintiff-Appellant, v. THE CITY OF LAKE FOREST, Defendant-Appellee.

Second District   No. 2—91—0065

Opinion filed October 23, 1991.

Donald L. Sime, of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan, and Donald J. Driscoll, of Michael, Best & Friedrich, of Milwaukee, Wisconsin (Lee J. Geromime, of counsel), for appellant.

Conzelman, Snarski & Stepanich, and Markham M. Jeep, of Markham M. Jeep, P.C., both of Waukegan (Murray R. Conzelman, of counsel), for appellee.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Edward E. Gillen Company (Gillen), appeals from the dismissal of count IX of plaintiff's amended complaint and an order granting judgment on the pleadings in favor of defendant, the City of Lake Forest (Lake Forest), as to all damages relating to the sinking of plaintiff's tugboat, the "Andrew J." We affirm. The following facts were set forth in the plaintiff's complaint.

In March 1986, Lake Forest invited marine contractors to submit sealed bids for the construction of Project No. C12284, which included the construction of offshore breakwaters in Lake Michigan. Gillen was awarded the contract.

An essential element of the project was the construction of Breakwater II, known as the pedestrian/fisherman walkway. Its construction differed significantly from the other breakwaters in that the stones were required to be fitted closely together so that pedestrians and fishermen could safely walk upon it. The project manual, which was the basis of Gillen's bid, required that Breakwater II be constructed with AIII stone weighing 8 to 10 tons each, cubic in shape, and which met other specifications contained in the manual.

In addition, the project manual required that the stone be procured solely from Valders Stone and Marble, Inc. (Valders). In mid-May 1986, Lake Forest contracted with Valders to supply 3,900 tons of AIII stone to Gillen. An addendum to that contract specifically required that all materials supplied by Valders conform to the requirements set forth in the project manual.

Construction of Breakwater II began in mid-September 1986, after Gillen had constructed a base for the breakwater. Around that same time, Valders supplied the first of three projected shipments of AIII stone to Gillen. Said stone had been inspected and approved

as complying with the contract specifications by an agent of Lake Forest at the Valders quarry.

The first shipment did not meet the contract specifications, particularly as to dimensions and cubic shape. Gillen superintendent Robert Wendorf complained to Lake Forest's site engineer and notified Valders that the stone was irregular, noncubic and nonconforming. Lake Forest's engineer instructed Gillen to select the better of the nonconforming stone and attempt to jigsaw the noncubic stone into the Breakwater II construction. This resulted in delays in the construction of the breakwater.

According to Gillen's complaint, this delay caused its tug, the "Andrew J," to be towing a loaded stone scow from Lake Forest to Waukegan, Illinois, in connection with Gillen's construction of the Breakwater II on October 8, 1986, despite the fact that towing was to have been completed by September 23, 1986, to avoid the seasonal high seas and strong winds on Lake Michigan. The "Andrew J" encountered high seas and strong winds on October 8, 1986, and sank.

Valders continued to supply nonconforming stone to Gillen. Halfway through the installation of the second load, Lake Forest's engineer agreed with Gillen that the stone could not be used for the project. Lake Forest then ordered Gillen to halt installation of the stone. Approximately 2,800 of the 3,900 tons of the stone had been installed. Lake Forest issued a change order in which the design of the breakwater was changed so as to require less of the nonconforming stone.

Gillen continued construction until work on the project was halted by mutual agreement due to winter storms. Construction was to resume in the spring of 1987. Gillen submitted a claim to Lake Forest for the additional costs it had incurred and would incur due to the nonconforming stone. Lake Forest denied this claim. In March, Lake Forest issued another change order requiring that certain portions of the AIII cubic stone steps be replaced with reinforced, precast concrete units, but this change order did not provide for additional compensation. Gillen refused to sign the change order, but did replace the stone with the concrete units as requested. Gillen completed construction on Breakwater II on May 14, 1987.

Gillen filed its amended complaint against Lake Forest and Valders on August 31, 1989. All claims against Valders were voluntarily dismissed without prejudice on February 15, 1990. Counts IV through IX were directed against Lake Forest. Count IX was dismissed for failure to state a cause of action on March 9, 1990, pur-

suant to a motion by Lake Forest. That count contained a "better-ment" or "unjust enrichment" claim seeking additional compensation for improving and bettering the construction of the breakwater.

Subsequently, Lake Forest moved for a judgment on the pleadings. On October 19, 1990, the court granted Lake Forest's motion as to all damages sought in paragraphs 19 through 24 of the amended complaint and stated that its order was final and appealable, finding that there was no just reason to delay its appeal pursuant to Supreme Court Rule 304(a). (134 Ill. 2d R. 304(a).) On November 2, 1990, the court modified its October 19 order by granting judgment on the pleadings only as to damages relating to the sinking of the tug, the "Andrew J," and deleting the portion of the order containing Rule 304(a) language. Gillen then moved to dismiss voluntarily the remainder of its causes of action against Lake Forest. The trial court granted this motion on December 14, 1991.

As a preliminary matter, Lake Forest has filed a motion in this court to dismiss the appeal or, in the alternative, to strike certain portions of Gillen's brief. Lake Forest contends this court lacks jurisdiction to hear the appeal because Gillen voluntarily dismissed the case. We disagree.

■ Lake Forest is correct in stating that as a general rule a plaintiff cannot appeal an order of voluntary dismissal. (See *Kahle v. John Deere Co.* (1984), 104 Ill. 2d 302.) An order of voluntary dismissal cannot be appealed by the plaintiff since he or she requested the order and thus is protected from prejudice by the statute of limitations which gives the plaintiff the absolute right to refile the action within one year of a voluntary dismissal without prejudice. (See Ill. Rev. Stat. 1989, ch. 110, par. 13—217; *Kahle v. John Deere Co.*, 104 Ill. 2d at 306.) However, Gillen is not attempting to appeal the order for voluntary dismissal. Rather, Gillen is asking this court to review the court's dismissal of count IX based upon Lake Forest's motion to dismiss, as well as the court's granting judgment on the pleadings as to all damages relating to the sinking of the tug "Andrew J," which was also based upon a motion made by Lake Forest.

■ A voluntary dismissal pursuant to section 2—1009 of the Code of Civil Procedure is a final and appealable order (*Swisher v. Duffy* (1987), 117 Ill. 2d 376, 379), and this court has jurisdiction to consider the merits of these appeals. (*Espedido v. St. Joseph Hospital* (1988), 172 Ill. App. 3d 460, 466.) Until the court entered the order for voluntary dismissal, Gillen could not have appealed the

dismissal of count IX of its amended complaint or the judgment on the pleadings as to all damages relating to the sinking of the tugboat absent a special finding that there was no just reason for delaying enforcement or appeal. 134 Ill. 2d R. 304(a).

Although the order granting judgment on the pleadings in favor of the defendant originally contained such language, the court subsequently struck the portion of the order containing that language. As such, Gillen was prevented from appealing the aforementioned orders until a final order was entered.

The order voluntarily dismissing the remaining counts disposed of all matters pending before the trial court concerning Gillen's cause of action, and, thus, the previous orders became final and appealable at that time. Accordingly, Lake Forest's argument that this court does not have jurisdiction to hear Gillen's appeal because Gillen voluntarily dismissed its cause of action against the city is meritless.

In the alternative, Lake Forest moves to strike the portion of Gillen's brief arguing the trial court erred in entering its order dismissing count IX of Gillen's complaint because Gillen did not specify its appeal of that order in its notice of appeal. We agree, and, accordingly, we strike that portion of Gillen's brief as we have no jurisdiction to consider it.

■ Supreme Court Rule 303(c)(2), which is jurisdictional in nature, requires that the notice of appeal specify the judgment or part thereof appealed from and the relief sought from the reviewing court. (134 Ill. 2d R. 303(c)(2).) Gillen's notice of appeal fails to mention the order of March 9, 1990, granting Lake Forest's motion to dismiss. The notice of appeal reads:

> "Now comes the plaintiff-appellant, Edward E. Gillen Company ***, and appeals to the Appellate Court ***, from the order entered by the Honorable Jack Hoogasian on October 19, 1990, and amended by the Court's order on November 2, 1990, and made final and appealable by the Court's order of December 14, 1990. By this appeal, the plaintiffs will ask the Appellate Court for a reversal of the trial court's order dismissing certain counts of the plaintiff's complaint and for a remand to the Circuit Court for further handling of those claims."

Gillen argues that the last sentence of its notice of appeal is sufficient to meet the requirements set forth in Rule 303(c)(2). Gillen contends that, although the March 9, 1990, order is not specifically referenced, it is obvious that Gillen would be seeking review

of that order because count IX was the only count "dismissed" by the trial court. We disagree.

■ This court has held that, where a plaintiff's notice of appeal was from a summary judgment order as to certain counts and did not refer to an earlier order dismissing other counts, a reviewing court lacks jurisdiction to consider the earlier dismissal order. (See *Village of Lisle v. Village of Woodridge* (1989), 192 Ill. App. 3d 568; *Long v. Soderquist* (1984), 126 Ill. App. 3d 1059.) Similarly, in *Illinois Central Gulf R.R. Co. v. Sankey Brothers, Inc.* (1979), 78 Ill. 2d 56, our supreme court held that the failure to mention an earlier order dismissing a counterclaim in the notice of appeal seeking review of a summary judgment order deprived the reviewing court of jurisdiction to consider the dismissal order. 78 Ill. 2d at 61.

■ Although our supreme court has held that a notice of appeal need not specify a particular order to confer jurisdiction if the order specified in the notice of appeal directly relates back to the judgment or order sought to be reviewed (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 434), this court has found that an order dismissing earlier counts of a complaint is not a step in the "procedural progression" leading to the summary judgment order as to the remaining counts; therefore, jurisdiction as to the dismissal of the earlier counts is lacking. (*Village of Lisle v. Village of Woodridge*, 192 Ill. App. 3d at 572-73.) We find the present situation analogous. It was not necessary for the trial court to have entered the order dismissing count IX on March 9, 1990, for it to subsequently grant judgment on the pleadings as to all counts concerning damages relating to the sinking of Gillen's tugboat.

Gillen argues that strict, technical compliance with Rule 303(c)(2) is not necessary and that the last sentence of its notice of appeal was sufficient to confer jurisdiction to review the March 9, 1990, order because count IX was the only count technically dismissed by the trial court. However, the last sentence merely informs this court of the relief sought by Gillen on appeal. The first sentence quite clearly specifies the orders from which Gillen is appealing. Nowhere does Gillen mention the March 9 order.

Moreover, Gillen's argument that the notice of appeal was sufficient because the March 9 order was the only order to dismiss involuntarily any of Gillen's counts is undermined by the wording contained in the notice of appeal itself. The last sentence of the notice reads, "reversal of the trial court's order dismissing certain *counts* of the plaintiff's complaint." (Emphasis added.) The word "counts" is pluralized. However, the March 9 order dismissed only

one count, count IX. It is not at all obvious upon reading that last sentence of the notice of appeal that Gillen intended to appeal the dismissal of count IX. Accordingly, this court does not have jurisdiction to review the March 9, 1990, order.

■ Gillen also contends on appeal that the trial court erred in granting judgment on the pleadings concerning all damages relating to the sinking of Gillen's tugboat. Judgment on the pleadings is properly granted when the pleadings establish the absence of a genuine issue of material fact and the moving party's entitlement to judgment as a matter of law. (*State Farm Fire & Casualty Co. v. Kleckner* (1990), 194 Ill. App. 3d 371, 375.) The motion may ask for judgment even though the only ground therefor is that the allegations of the complaint are insufficient to state a cause of action. *Mitchell v. Waddell* (1989), 189 Ill. App. 3d 179, 182.

■ Gillen argues that its amended complaint sufficiently alleged that the delay resulting from the supply of nonconforming stone directly and proximately caused damage to Gillen, including the sinking of its tug. On appeal, Gillen argues that its amended complaint sufficiently pleaded the sinking of its tug was foreseeable. In support of this contention, Gillen cites cases sounding in tort. However, Gillen's action against Lake Forest is based on breach of contract (including breach of express warranty, breach of implied warranty and reformation), not negligence. Where a contract has been breached, recoverable damages are those which (1) naturally result from the breach, or (2) are the consequence of special or unusual circumstances which were within the reasonable contemplation of the parties when making the contract. (*Midland Hotel Corp. v. Reuben H. Donnelley Corp.* (1987), 118 Ill. 2d 306, 318; *Cencula v. Keller* (1989), 180 Ill. App. 3d 645, 650.) Nothing in Gillen's amended complaint supports an action for damages resulting from the sinking of the tugboat under a breach of contract theory.

Gillen mistakenly focuses on the issue of foreseeability instead of whether the sinking of the tug was a special or unusual circumstance within the reasonable contemplation of the parties when they made the contract. In *Cencula v. Keller* (180 Ill. App. 3d at 650), we found that the trial court erred in instructing the jury that a party could recover under a breach of contract theory if its damages were foreseeable. Rather, we held that the trial court should have instructed the jury to award the damages only if such damages were within the reasonable contemplation of the parties when making the contract. (180 Ill. App. 3d at 651-52.) As a matter of law, Gillen's complaint is insufficient to state a cause of action to

recover damages resulting from the sinking of its tugboat because it fails to establish that such damages were within the reasonable contemplation of the parties when they contracted.

Accordingly, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

UNVERZAGT and McLAREN, JJ., concur.