RIBLET PRODUCTS CORPORATION, Plaintiff-Appellee, v. STARR NATIONAL, Defendant and Third-Party Plaintiff-Appellant (Inca Plastics, Inc., *et al.*, Third-Party Defendants-Appellees; Agri-Plastics, Inc., *et al.*, Third-Party Defendants-Appellees).

Third District No. 3—92—0422

Opinion filed March 30, 1993.

Hartzell, Glidden, Tucker & Hartzell, of Carthage (Stanley L. Tucker, of counsel), for appellant.

Kavanagh, Scully, Sudow, White & Frederick, of Peoria (Charles G. Roth, of counsel), for appellees Inca Plastics, Inc., and Jean G. Petersburg.

A. Anthony Ashenhurst, of Flack, McRaven & Stephens, of Macomb (Bruce J. Biagini, of counsel), for other appellees.

JUSTICE STOUDER delivered the opinion of the court:

This appeal arises from a final judgment of the circuit court granting summary judgment in favor of counterdefendants Inca Plastics, Inc. (Inca), and Jean Petersburg, executor of the estate of Richard Petersburg, and denying the motion for summary judgment on major issues filed by the counterplaintiff, Dolly Enterprises, Inc., d/b/a Starr National (Dolly). The final judgment order also expressly affirmed all other orders and decisions issued by the court during the proceedings. These other orders included an order granting Inca leave to file an amended complaint substituting Riblet Products Corporation (Riblet) as plaintiff, an order denying Dolly's motion to realign the parties, an order granting summary judgment in favor of counterdefendants Agri-Plastics, Inc. (Agri-Plastics), and Rae Johnston, and an order granting Riblet's motion to voluntarily dismiss and striking the counterclaim of Dolly against Riblet. Dolly raises the following issues on appeal: (1) whether it was error for the circuit court to award summary judgment in favor of Inca and Petersburg on the theory that they could only be third-party defendants; (2) whether it was error for the circuit court to deny Dolly's motion for realignment of the

parties; (3) whether the circuit court erred in granting Riblet's motion for voluntary dismissal; (4) whether the circuit court erred in denying Dolly's motion for summary judgment on major issues; and (5) whether it was error for the circuit court to grant summary judgment in favor of Johnston and Agri-Plastics and against Dolly.

On October 20, 1986, Inca filed a complaint against Dolly to collect an account receivable for specially manufactured goods. The complaint alleged that on various dates in 1984 and 1985 Dolly ordered plastic flush pan tops from Inca. The flush pans were trays used by livestock producers for the disposal of animal waste. The complaint alleged that with respect to each of these orders, Inca manufactured and delivered the flush pan tops to Dolly and that Dolly accepted them. Inca alleged that Dolly agreed to pay the amount due for each order within 30 days after the receipt of the merchandise, but had so far refused to pay. Inca requested judgment in the amount of $17,830.90, the amount alleged to be due for the products delivered but not paid for.

Dolly's answer admitted that Inca manufactured the flush pan tops on the various dates, but denied that they were made to Dolly's specifications. Dolly also denied that it had promised to pay the amount due for each order within 30 days after the receipt of the merchandise and denied that it owed Inca the amount alleged in the complaint.

Dolly further filed a three-count counterclaim. Count I was directed at Inca and alleged that Inca breached the implied warranties of merchantability and fitness for a particular purpose. Count I alleged that prior to November 14, 1984, the flush trays manufactured by Inca and delivered to Dolly met Dolly's special requirements that the trays not be subject to cracking or leaking when placed in service. However, after November 14, 1984, the trays manufactured by Inca for Dolly began cracking when installed in swine breeding operations by Dolly's customers. Dolly alleged that they did not become aware of the defective condition of the trays until April of 1985. Dolly further alleged in count I that it had been required to replace flush trays sold to its customers at a cost of $30,000 to Dolly and that in the future it would have to replace an additional 681 trays at a cost of about $128,500. Count I requested judgment against Inca in the amount of $158,000.

Count II of the counterclaim was a complaint for interference with business and was directed against Inca and its president, Richard Petersburg. Count II alleged that Dolly is a manufacturer of plastic flush trays and typically contracts out the plastic molding por-

tion of the production to outside plastic molders, and that, beginning in 1983, Inca was engaged in the molding of the trays for Dolly. It was further alleged that Inca had designed and manufactured the molds to be used in the production of the trays and that Dolly had paid Inca for the design and construction of the molds. Dolly alleged that it owned the molds after they were constructed and paid for, that they had demanded their return after the defective trays were produced, and that Petersburg had refused to return them. Count II alleged that the conduct of Inca and Petersburg was an intentional interference with Dolly's ownership and possession of the molds and was done intentionally, willfully, and maliciously. Dolly claimed that the conduct of Petersburg and Inca in withholding the molds had caused it damages in the following amounts: $9,302 incurred by Dolly in remanufacturing the molds; $13,500 for additional molds that still need to be replaced; and $326,332.28 in lost gross sales during the period when the molds were being remanufactured. Count II prayed for judgment against Petersburg and Inca in the sum of $349,134.28 and costs of suit, and also requested punitive damages in an appropriate amount.

Count III of the counterclaim was a complaint for intentional interference with business and was directed against Inca, Agri-Plastics, and Rae Johnston. Count III alleged that Agri-Plastics is a business started by Rae Johnston in about 1984, and that prior to starting that business, Rae Johnston was Agri-Products manager of Inca. Dolly alleged that, in or about November of 1984, Inca and Johnston caused the plastic being used for the manufacture of Dolly's flush trays to be changed, and that the trays manufactured after the change have been defective. Apparently forgetting that it had already alleged that Rae Johnston started Agri-Plastics in 1984, Dolly alleged that Johnston formed a company known as Agri-Plastics in 1985. Dolly further alleged that soon after the change in plastic, Johnston left Inca and entered into business as Agri-Plastics, engaging in the manufacture of flush trays in direct competition with Dolly. Dolly alleged that Inca, Agri-Plastics, and Johnston were under a duty to refrain from wrongful interference with Dolly's right to operate its business, business relationships, business expectancies, good will, and existing and anticipated economic advantage. Dolly alleged that Inca, Agri-Plastics, and Johnston violated that duty intentionally, maliciously, and in bad faith by committing one or more of the following acts: (1) knowingly and intentionally changing the plastic without notice to Dolly; (2) knowingly and intentionally changing the plastic knowing that it would cause Dolly's products to be defective; (3) knowingly and intentionally

changing the plastic at a time when one or more of them was planning to go into business in direct competition with Dolly; and (4) knowingly and intentionally engaging in the manufacture and sale of flush trays in order to capture and appropriate Dolly's good will, business expectancies, business relationships and customers. In count III, Dolly prayed for judgment in the amount of $566,301.68 and costs of suit and asked that punitive damages be assessed in an appropriate amount.

Inca moved to dismiss all three counts of the counterclaim on the grounds that each of the counts stated more than one cause of action, in violation of section 2—603(b) of the Code of Civil Procedure (the Code) (735 ILCS 5/2—603(b) (West 1992)). On December 3, 1987, the court entered an order granting the motion to dismiss the counterclaim for failing to segregate the causes of action.

On May 30, 1988, Dolly filed its amended counterclaim. Count I(a) was directed against Inca for breach of the implied warranty of merchantability, and count I(b) was directed against Inca for breach of the implied warranty of fitness for a particular purpose. Count II of the counterclaim was a complaint for interference with business and was divided into two parts. Count II(a) was against Inca, and count II(b) was against Petersburg. Count III of the counterclaim was for intentional interference of business (changing plastic) and was divided into three parts. Count III(a) was against Inca, count III(b) was against Agri-Plastics, and count III(c) was against Johnston.

Inca and Petersburg filed a joint answer to the counterclaim on April 19, 1988, and also asked for a setoff in the amount alleged to be owed by Dolly to Inca in the original complaint. Johnston and Agri-Plastics filed their answers to the amended counterclaim on April 29, 1988.

On June 29, 1989, Inca and Petersburg filed a motion for judgment on the pleadings with respect to counts II(a), II(b), and III(a) of Dolly's amended counterclaim. Inca and Petersburg claimed that the relevant counts of the counterclaim failed to sufficiently allege either interference with contractual relationships or interference with prospective economic advantage. Dolly filed a response to the motion, claiming that its cause of action was not one for interference with contractual relations or interference with prospective economic advantage, but rather was for interference with business relationships. Dolly cited *O'Brien v. State Street Bank & Trust Co.* (1980), 82 Ill. App. 3d 83, 401 N.E.2d 1356, as authority for the proposition that Illinois recognizes such a cause of action. Inca responded with a motion to add additional authority, and cited the case *King v. Levin* (1989),

184 Ill. App. 3d 557, 540 N.E.2d 492, for the proposition that a plaintiff, when proceeding on a tortious interference theory, needs to plead and prove the absence of privilege and must allege facts from which actual malice may be inferred. Inca claimed that counts II and III failed to allege facts constituting actual malice. On November 8, 1989, the circuit court entered an order granting the motion for judgment on the pleadings with respect to counts II(a) and II(b), but denied the motion with respect to count III.

On November 22, 1989, Inca filed a motion for leave to file an amended complaint substituting Riblet for Inca. Inca claimed that on or about October 9, 1985, it had sold its assets and assigned certain of its accounts receivable to Riblet. Further, Inca had dissolved as a corporation on or about May 5, 1986. Inca claimed that, because the complaint in this matter was filed on October 20, 1986, Riblet was the proper party plaintiff. Inca attached to the motion an amended complaint that substituted Riblet for Inca, and also a copy of the assignment and bill of sale between Riblet and Inca. On January 8, 1990, the court entered an order directing Inca to file an amended complaint naming Riblet as plaintiff. The order was silent as to Inca's status as counterdefendant. The court expressly retained jurisdiction over Inca and granted Dolly leave to file any appropriate pleadings against Inca. On January 8, Inca filed the amended complaint naming Riblet as plaintiff.

Further, on January 8, Dolly filed an amendment to the amended counterclaim. The amendment retained counts II(a) and (b) of the amended counterclaim against Inca and Petersburg, respectively, for interference with business, but added additional facts.

On January 16, 1990, Dolly filed a motion to realign the parties. Dolly claimed that there was no need for it to file additional pleadings because of the counterclaim already pending. Dolly asked the court to redesignate Inca as a codefendant. Inca responded to the motion by claiming that, after the substitution of Riblet as plaintiff, the only appropriate pleadings against Inca were third-party claims pursuant to section 2—406 of the Code (735 ILCS 5/2—406 (West 1992)).

On January 29, 1990, Dolly filed a motion to strike the amended complaint. The motion was based on section 2—403 of the Code (735 ILCS 5/2—403 (West 1992)) and alleged that, pursuant to that section, Riblet was required to state in the complaint how and when it acquired ownership of the cause of action.

On February 22, 1990, Inca and Petersburg filed a motion to dismiss Dolly's amendment to the amended counterclaim. Inca and Petersburg claimed that a counterclaim was not permissible against ei-

ther of them, and also that Dolly was confusing the torts of interference with contractual relations and interference with prospective economic advantage. The motion further claimed that Dolly was attempting to change a contract action into a tort action.

On May 9, 1990, Dolly filed a motion for summary judgment on major issues. Dolly asked the court to enter summary judgment finding that Inca knew of Dolly's special requirements regarding the flush trays, yet changed the plastic being used to manufacture them without notice to Dolly, and that Inca was aware of the problems with the changed plastic in January and February of 1985.

On May 15, 1990, Dolly filed its response to Inca's motion to dismiss the amendment to the amended counterclaim. Dolly claimed in its response that a counterclaim was a proper action for it to bring against Inca and Petersburg and that counts II(a) and (b) of the counterclaim properly stated a cause of action for interference with business.

The court entered an order on May 16 granting Dolly's motion to strike the amended complaint and directing Riblet to file a verified complaint within 21 days.

On June 1, 1990, Riblet filed its amended complaint. The complaint was changed only in the respect that Riblet now included facts as to how and when it acquired the right of action against Dolly.

On June 4, 1990, the attorneys for Richard Petersburg filed a suggestion of death. The suggestion of death indicated that Petersburg had died on May 16, 1990. Pursuant to a motion by Dolly, the court entered an order substituting Jean Petersburg, executor of Petersburg's estate, for Petersburg as a party defendant on September 26, 1990.

On July 5, 1990, Riblet filed a motion to voluntarily dismiss the action pursuant to section 2—1009 of the Code (735 ILCS 5/2—1009 (West 1992)). Riblet asked the court to dismiss the action without prejudice.

Dolly, on July 20, 1990, filed an answer to Riblet's amended complaint and also filed a counterclaim against Riblet. The counterclaim was for replevin of Dolly's molds. Dolly claimed that Riblet was wrongfully withholding the molds and asked for damages in the amount of $570,722.42.

On July 25, Dolly filed a motion to add Rowe Industries, Inc., as a party defendant. Dolly stated in the motion that Inca had filed an affidavit wherein it claimed that the stock of Inca was owned by Groman Corporation, and that Groman Corporation had changed its name to Rowe Industries, Inc. Dolly claimed that Rowe had a substantial inter-

est in the litigation because it would be ultimately liable for any judgment in favor of Dolly and against Inca.

The court entered an order on August 8, 1990, granting Dolly leave to add Rowe Industries as a defendant by service of summons. The court further ruled that Dolly's amendment to the amended counterclaim properly stated a cause of action, but that any claims against Inca and Petersburg needed to be brought as third-party actions pursuant to section 2—406 of the Code.

Agri-Plastics and Johnston filed motions for summary judgment (735 ILCS 5/2—1005 (West 1992)) against Dolly on August 17, 1990. Agri-Plastics stated in support of its motion that it was not yet incorporated at the time of the alleged change in plastic. Johnston stated in support of his motion that the various depositions of himself, Petersburg, Bruce Galbreath, and Rodney Juday indicated that he had no knowledge or authority concerning the type of plastic used in the production of Dolly's flush trays.

On September 12, 1990, Inca and Petersburg filed motions for summary judgment against Dolly. Their motion was based on the court's ruling that any claims against Inca and Petersburg needed to be in the form of third-party complaints. Inca and Petersburg point out that a third-party complaint can only be for indemnity or contribution for all or part of the plaintiff's claim. Dolly's counterclaim sought recovery for its own losses and, therefore, Inca and Petersburg point out that it cannot be the basis for a third-party claim. Inca and Petersburg filed a memorandum in support of their position. Inca and Petersburg further filed a response to Dolly's motion for summary judgment, wherein they claimed that Dolly's motion was not supported by competent evidence because it was primarily based on the discovery deposition of Petersburg, which would no longer be admissible because of Petersburg's death.

On October 12, 1990, Dolly filed its response to Agri-Plastics' motion for summary judgment. Dolly listed the facts from the various depositions that it believed would support an inference that Johnston was aware of the problems with the plastic.

On October 29, 1990, the court entered an order granting Riblet's motion to voluntarily dismiss. The court stated that the litigation between Riblet and Dolly was terminated on July 5, 1990, and also struck Dolly's counterclaim against Riblet because the litigation had been terminated. Dolly subsequently filed a motion asking the court to reconsider its finding that any claims by Dolly against Inca and Petersburg needed to be in the nature of third-party actions rather than counterclaims.

Dolly filed a post-trial motion on November 16, 1990, claiming that it was error for Riblet to be allowed to voluntarily dismiss because of the pending counterclaim against Riblet. Dolly cited section 2—1009 of the Code for the proposition that a defendant's permission is needed to allow a plaintiff to voluntarily dismiss when there is a counterclaim pending.

On February 4, 1991, the court entered an order granting summary judgment in favor of Agri-Plastics and Rae Johnston. The court stated in its order that there was no issue of material fact. Dolly filed a post-trial motion in response claiming that there were genuine issues of material fact as to every point raised in the motion for summary judgment.

On May 4, 1992, the court entered an order granting summary judgment in favor of Inca and Petersburg and against Dolly as to all counts of what the court called the "third-party complaint." The court also denied Dolly's motion for summary judgment on major issues. Further, the court denied all of Dolly's motions for reconsideration and stated that all other orders and decisions of the court were expressly affirmed in all respects. This appeal followed.

Dolly first argues on appeal that it was error for the circuit court to grant summary judgment in favor of Inca and Petersburg on the theory that they could only be third-party defendants and that it was also error for the court to deny Dolly's motion to realign the parties. Dolly argues that the substitution of Riblet as plaintiff for Inca did not affect the counts of Dolly's amended counterclaim that remained pending against Inca. Inca and Jean Petersburg respond that, following the substitution of Riblet for Inca, Inca and Petersburg were no longer parties and needed to be brought in by third-party complaints pursuant to section 2—406. Inca and Jean Petersburg point out that counterclaims are governed by section 2—608 of the Code (735 ILCS 5/2—608 (West (1992)) and are brought against plaintiffs or codefendants. They argue that summary judgment was appropriate because a third-party complaint is limited to recovery by a defendant for all or part of a third-party's claim against the defendant. Inca and Jean Petersburg rely on the recent decision of the supreme court in *People v. Fiorini* (1991), 143 Ill. 2d 318, 574 N.E.2d 612, in support of their position. In that case, the supreme court, in discussing the difference between counterclaims and third-party complaints, stated the following:

> "A counterclaim is an action brought by a named party against another existing party to the action, and is governed by section 2—608 of the Illinois Code of Civil Procedure (Ill. Rev. Stat.

1985, ch. 110, par. 2—608). By contrast, a third-party complaint is an action brought by an existing party against one or more new parties, none of whom were parties to the original suit. (Ill. Rev. Stat. 1985, ch. 110, par. 2—406.) In the instant case, none of the parties named in defendants' responsive pleading was a party to plaintiffs' original action. Summons was necessary and was issued on each of the parties named in the responsive pleading. In accord with section 2—406 of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 2—406), defendants' pleading thus must be considered as a third-party complaint, rather than a counterclaim." *Fiorini*, 143 Ill. 2d at 329-30, 574 N.E.2d at 615.

■ Interestingly enough, the very authority relied on by Inca shows why Inca is incorrect. The supreme court specifically states in *Fiorini* that third-party complaints are necessary against those who were *not parties to the original action*. Considering that Inca filed the original complaint in this matter and litigated it for over three years before Riblet was substituted as plaintiff, we believe that it would be ludicrous for Inca to argue that they were not parties to the original action following the substitution. The court specifically retained jurisdiction over Inca and authorized Dolly to file any appropriate pleadings against Inca. Because Inca was an original party to the action, a counterclaim was an appropriate pleading to file against it. Dolly is correct in asserting that it was not necessary for it to file any additional pleadings against Inca because there was already a valid counterclaim pending. Further, at the time of the court's order substituting Riblet for Inca, Inca was in the case both as a plaintiff and as a counterdefendant. The order substituted Riblet as plaintiff in the matter, but was silent as to Inca's status as counterdefendant. Inca remained a counterdefendant following the substitution, and the relevant counts of the counterclaim were still pending against it. The summary judgment in favor of Inca is reversed.

■ Petersburg's status in the case is slightly different than that of Inca. Petersburg was not a party to the original complaint but was first mentioned in Dolly's counterclaim. Inca and Jean Petersburg argue that, therefore, any complaint against Petersburg must be in the nature of a third-party complaint and not a counterclaim. Once again, they are incorrect. The counterclaim was valid against Petersburg through a combination of sections 2—401(d) and 2—405(a) of the Code (735 ILCS 5/2—401(d), 2—405(a) (West 1992)). Section 2—401(d) provides as follows:

"Unless a contrary meaning is indicated, wherever used in this Act and in rules adopted pursuant hereto *** the term 'defendant' includes third-party defendants and parties against whom relief is sought by counterclaim." (735 ILCS 5/2—401(d) (West 1992).)

Section 2—405(a) allows for the joinder of defendants who are alleged to have an interest in the controversy or "in the transaction or series of transactions out of which the controversy arose." (735 ILCS 5/2—405(a) (West 1992).) The claim against Petersburg arose out of the same transactions involved in the claim against Inca, and therefore Petersburg was properly joined as a counterdefendant. Nothing in section 2—405(a) indicates that it was not meant to apply to parties against whom relief is sought by a counterclaim. The summary judgment in favor of Jean Petersburg is reversed.

■ As a corollary to this issue, Dolly alleges that it was error for the court to deny its motion to realign the parties. Dolly relies on section 2—1008(a) of the Code (735 ILCS 5/2—1008(a) (West 1992)), which pertains to the procedure for substitution of parties, in support of this motion. This section does not mention anything about "realignment." It appears from Dolly's motion that all it is requesting is a change in the title of the case. Section 2—1008(a) provides in part that, after a substitution, the cause carries on "with or without a change in the title of the cause." (735 ILCS 5/2—1008(a) (West 1992).) This appears to give the trial judge discretion whether or not to change the title of the cause. Although it would make sense to retitle the case in such a way as to reflect the status of the parties as we have determined them to be, the court appears to have discretion whether or not to make that change. In this case, the court's denial of Dolly's motion to realign the parties appears to have been based on the faulty premise that Dolly did not have a valid counterclaim pending. Therefore, we will vacate the court's denial of that motion, and the court can, on remand, reconsider its ruling in light of this opinion. The judgment of the court with respect to the denial of Dolly's motion to realign the parties is vacated.

■ The next argument raised by Dolly is that it was error for the court to award voluntary dismissal to Riblet and to strike Dolly's counterclaim against Riblet. We agree. Section 2—1009 of the Code generally permits a party to voluntarily dismiss its cause at any time before a trial or hearing begins. However, that section also provides an exception to the general rule: "After a counterclaim has been pleaded by a defendant no dismissal may be had as to the defendant except by the defendant's consent." (735 ILCS 5/2—1009(a) (West

1992).) If the only counterclaim at issue in this case was the one filed against Riblet, then Riblet should have been allowed to voluntarily dismiss. The counterclaim against Riblet was not filed until after the motion to dismiss was filed, and in that situation, the counterclaim would be too late to prevent dismissal. (See *In re Marriage of Wright* (1980), 92 Ill. App. 3d 708, 711-12, 415 N.E.2d 1196, 1200, *vacated on other grounds* (1982), 89 Ill. 2d 498, 434 N.E.2d 293.) However, we have already determined in the instant case that there was a valid counterclaim pending against Inca. Riblet claims that, even if that was a valid counterclaim, it would not prevent dismissal because the counterclaim referred to in the statute means a counterclaim against the party seeking to dismiss. Dolly argues that the statute is not claim specific and that a counterclaim against other parties can prevent a plaintiff from voluntarily dismissing. The supreme court's recent decision in *Heck v. Central Illinois Light Co.* (1992), 152 Ill. 2d 401, 604 N.E.2d 939, indicates that Dolly is correct. The court in that case held that a defendant's counterclaim against a codefendant was sufficient to bar the plaintiff's right to voluntarily dismiss. The court concluded that the use of the term "counterclaim" in the voluntary dismissal section was not limited to counterclaims against the party seeking to dismiss. In reaching that conclusion, the court stated the following:

> "Had the legislature intended to limit the applicability of section 2—1009 to counterclaims asserted against a plaintiff it could have easily done so. The legislature could merely have inserted the phrase 'against the plaintiff' into that section. Instead, the legislature placed no qualifications on the term 'counterclaim' when it enacted section 2—1009." (*Heck*, 152 Ill. 2d at 406, 604 N.E.2d at 942.)

As the supreme court has specifically held that the counterclaim referred to in the voluntary dismissal section does not have to be against the plaintiff, we conclude that the counterclaim pending against Inca, Jean Petersburg, Rae Johnston, and Agri-Plastics was sufficient to bar the right of Riblet to seek a voluntary dismissal without Dolly's consent. The judgment of the court with respect to the granting of Riblet's motion to voluntarily dismiss and the striking of Dolly's counterclaim is reversed.

■ Dolly next argues that the circuit court erred in denying its motion for summary judgment on major issues. We have reviewed Dolly's motion and have concluded that it is entirely based on the discovery deposition of Richard Petersburg. Petersburg had died by the time the court ruled on Dolly's motion for summary judgment on ma-

jor issues. It was held in *Abel v. General Motors Corp.* (1987), 155 Ill. App. 3d 208, 221, 507 N.E.2d 1369, 1378, that after the death of a deponent, the deponent's discovery deposition could not be considered by the court in ruling on a defendant's motion for summary judgment. The court reasoned that, since only evidentiary facts could be considered in ruling on a motion for summary judgment, a discovery deposition could not be used after the death of the deponent because only evidence depositions could be used in place of live testimony under such circumstances. Therefore, we conclude that the trial court properly denied Dolly's motion for summary judgment on major issues.

Dolly's final argument is that it was error for the court to grant summary judgment in favor of Rae Johnston and Agri-Plastics. The purpose of summary judgment proceedings is to ascertain whether there is an issue of fact to try and not to try the fact issue. (*Fitt v. City of Mattoon* (1991), 215 Ill. App. 3d 472, 574 N.E.2d 1275.) By statute, summary judgment is to be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (735 ILCS 5/2—1005(c) (West 1992).) The trial court must construe the pleadings, affidavits, and depositions in the light most favorable to the nonmoving party. (*Wilmere v. Stibolt* (1987), 152 Ill. App. 3d 642, 504 N.E.2d 916.) The appropriate standard of review regarding summary judgment is to determine if the trial court properly decided there were no material issues of fact and that the judgment was correct as a matter of law. *Johnston v. Tri-City Blacktop, Inc.* (1991), 217 Ill. App. 3d 388, 577 N.E.2d 529.

■ With regard to Agri-Plastics, we find that the court correctly determined that there were no genuine issues of material fact. Agri-Plastics was not incorporated until after the problems with the flush pans manufactured for Dolly had already occurred. The relevant allegations in count III of the amended counterclaim concern whether or not Rae Johnston, Inca, and Agri-Plastics knowingly caused a change in the plastic being used in the manufacture of Dolly's products knowing that the change would cause cracking and leaking. Agri-Plastics was not in existence at the time and therefore could not have caused that change. All that can be said for Agri-Plastics is that it engaged in direct competition with Dolly in the production and sale of flush trays. The summary judgment in favor of Agri-Plastics is affirmed.

Rae Johnston's situation is different than that of Agri-Plastics. Construing the pleadings and supporting documents in the light most favorable to Dolly, we find that the circuit court was incorrect in de-

termining that there was no genuine issue of material fact with respect to Johnston. For the reasons stated above in discussing Dolly's motion for summary judgment on major issues, the discovery deposition of Petersburg should not have been used in ruling on this motion for summary judgment. Considering the pleadings and the depositions other than Petersburg's, different inferences could be drawn concerning Johnston's involvement in the change in plastic in Dolly's products. Johnston had formulated the idea for going into a new business prior to the time that the plastic was changed in Dolly's product. Johnston stated that he had made suggestions involving changes in plastic formulas. Johnston was involved in dealing with problems involving plastic and participated in meetings regarding the problems with Dolly's products. Further, Johnston later used pictures of Dolly's molds in sales literature for Agri-Plastics. These factual allegations, construed in the light most favorable to Dolly, could support an inference that Johnston engaged in the conduct alleged by Dolly in the counterclaim. The circuit court was premature in dispensing Johnston from the suit, as there were clearly genuine issues of material fact to be decided. The circuit court's granting of summary judgment in favor of Johnston is reversed.

For the reasons indicated above, the judgment of the circuit court of McDonough County is affirmed with respect to the denial of Dolly's motion for summary judgment on major issues and the granting of summary judgment in favor of Agri-Plastics. The judgment is reversed with respect to the granting of summary judgment in favor of Inca and Jean Petersburg, the granting of Riblet's motion to voluntarily dismiss, and the granting of summary judgment in favor of Johnston. The judgment is vacated with respect to the denial of Dolly's motion to realign the parties. The cause is remanded for further proceedings consistent with this opinion.

This decision should not be read as expressing any opinion as to the method by which Riblet was substituted for Inca.

Affirmed in part; reversed in part; vacated in part and remanded.

LYTTON and BRESLIN, JJ., concur.