SADDLE SIGNS, INC., Plaintiff-Appellee, v. JAMES C. ADRIAN, Defendant-Appellant.

Third District    No. 3—94—0549

Opinion filed May 8, 1995.

Anthony J. Nasharr III, of Gregorio & Nasharr, of Chicago, for appellant.

James T. Bradley, of James T. Bradley & Associates, of Joliet, for appellee.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Defendant, James C. Adrian, appeals from a judgment issued by the circuit court of Will County denying defendant's motion to dismiss plaintiff's first amended complaint. We hold there is no jurisdiction to hear this appeal.

Plaintiff, Saddle Signs, Inc., filed a breach of contract action against defendant. Plaintiff's complaint essentially alleged that the parties entered into an advertising display agreement and after sev-

eral months defendant had owed plaintiff $3,700 under the terms of that agreement. Consequently, the parties terminated the contract and plaintiff commenced this lawsuit.

Defendant alleged he was not personally liable under the agreement because he signed it in his capacity as president of Saddle Club, Inc. Consequently, defendant filed a motion for judgment on the pleadings or dismissal of plaintiff's complaint. The trial court denied this motion and granted defendant leave to file a motion for summary judgment. On December 16, 1993, plaintiff filed his first amended complaint. Defendant did not file a motion for summary judgment. However, he did file a motion to dismiss plaintiff's first amended complaint pursuant to section 2—619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 1992)). Not to be outdone, plaintiff filed his own motion entitled "Plaintiff's Cross Motion for Partial Summary Judgment on Liability" on May 25, 1994. On June 14, 1994, the trial court denied defendant's motion to dismiss as well as plaintiff's motion for summary judgment and set the case for trial. However, on the same day, plaintiff filed a motion for voluntary nonsuit pursuant to section 2—1009 of the Code (735 ILCS 5/2—1009 (West 1992)) for the purpose of refiling his claim with a jury demand. The trial court granted plaintiff's motion. Defendant then filed his notice of appeal.

In his statement of jurisdiction, defendant states:

> "Jurisdiction of this appeal to the Appellate Court of the Third Judicial District is based on the entry of an Order denying Defendant's Motion to Dismiss First Amended Complaint [sic] and the subsequent voluntary dismissal of the cause by Plaintiff, Saddle Signs, for the purpose of Plaintiff filing a new case against Defendants with a jury demand in accordance with Illinois Supreme Court Rule 303."

Neither party has objected to the jurisdiction of this court. However, we have determined to consider the issue on our own motion.

■ A reviewing court must inquire into its jurisdiction and must decline to proceed in the cause where jurisdiction is lacking. (*City Wide Carpet, Inc. v. John* (1980), 83 Ill. App. 3d 538, 404 N.E.2d 465.) The parties cannot, either by failing to raise the question or by consent, confer jurisdiction to review an order if in fact the order appealed from is not appealable. *Liberty National Bank v. City of Chicago* (1950), 342 Ill. App. 328, 96 N.E.2d 663.

■ Defendant, in reality, is claiming jurisdiction pursuant to Supreme Court Rule 301. (Official Reports Advance Sheet No. 26 (December 22, 1993), R. 301, eff. February 1, 1994.) However, subject to statutory exceptions, this rule only confers jurisdiction to review

final judgments. (*Maple Investment & Development Corp. v. Skore* (1976), 38 Ill. App. 3d 654, 348 N.E.2d 498.) A final judgment, for the purposes of determining whether the trial court judgment is appealable, is one which fixes, determines, and disposes of the parties' rights regarding litigation on some definite, separate part of litigation. *Madison Mutual Insurance Co. v. Universal Underwriters Group* (1993), 251 Ill. App. 3d 13, 621 N.E.2d 270.

Applying these rules to the trial court's denial of defendant's section 2—619 motion, we conclude this court has no jurisdiction to hear the appeal. However, the troubling issue presented by this case is whether a plaintiff's voluntary dismissal makes an otherwise nonappealable judgment appealable. In other words, whether we may consider the trial court's denial of defendant's motion to dismiss pursuant to section 2—619 of the Code simply because the trial court granted plaintiff's voluntary dismissal. We believe the voluntary dismissal did not confer jurisdiction.

■ First, we note the denial of a motion to dismiss is not a final and appealable judgment. (*People v. American National Bank & Trust Co.* (1965), 32 Ill. 2d 115, 203 N.E.2d 897.) Furthermore, the denial of defendant's motion to dismiss does not fall within the purview of any of the supreme court rules concerning interlocutory appeals. Consequently, the only possible jurisdictional basis from which this appeal may be heard is through section 2—1009 of the Code.

■ Plaintiff is generally entitled to voluntarily dismiss his case at any time before trial or hearing begins. (*Riblet Products Corp. v. Starr National* (1993), 242 Ill. App. 3d 988, 611 N.E.2d 68; but see *Gibellina v. Handley* (1989), 127 Ill. 2d 122, 535 N.E.2d 858 (a trial court may hear and decide a motion which has been filed prior to a section 2—1009 motion when that motion, if favorably ruled on by the court, could result in a final disposition of the case).) Plaintiffs' motivations for utilizing this rule are irrelevant. (*Estate of Jackson v. Smith* (1987), 183 Ill. App. 3d 663, 541 N.E.2d 1117.) Furthermore, plaintiffs' absolute right to voluntary dismissal without prejudice is not affected by any hardship to the defendant. (*Kendle v. Village of Downers Grove* (1987), 156 Ill. App. 3d 545, 509 N.E.2d 723.) Finally, we note the most common use for this rule is to enable plaintiffs to correct technical errors in their pleadings. *Kern v. Peabody Coal Co.* (1987), 151 Ill. App. 3d 807, 502 N.E.2d 1322 (plaintiff who waives his right to jury trial by failing to file a timely jury demand has an absolute right to voluntarily dismiss his case without prejudice and refile with a jury demand).

Notwithstanding the seemingly simple use of this important procedural device, the uses and effects of voluntary dismissals have

traditionally caused great concern in our courts. (*Cardenas v. Village of Oak Brook* (1989), 178 Ill. App. 3d 605, 533 N.E.2d 947.) Section 2—1009 has exerted significant trepidation throughout its long and storied history. Nevertheless, we must begin our analysis with *Kahle v. John Deere Co.* (1984), 104 Ill. 2d 302, 472 N.E.2d 787. In *Kahle*, our supreme court held that a voluntary dismissal was a final and appealable order. (*Kahle*, 104 Ill. 2d 302, 472 N.E.2d 787.) However, defendants alone were given the right to appeal a trial court's decision to grant a voluntary dismissal. The court's rationale was straightforward. Plaintiffs could not appeal because they had an absolute right to refile their case within one year of a voluntary dismissal. Thus, following the logic of *Flores v. Dugan* (1982), 91 Ill. 2d 108, 435 N.E.2d 480, plaintiffs were and are protected from prejudice. However, defendants, unlike plaintiffs, have no recourse to address potential prejudices associated with voluntary dismissals. Specifically, the court reasoned:

> "If there is no review of the case, no court will be able to determine whether the trial court correctly decided that trial or hearing had not begun and therefore correctly entered an order dismissing the case without prejudice." (*Kahle*, 104 Ill. 2d at 306, 472 N.E.2d at 789.)

Consequently, in order to remedy these potentially prejudicial results, the court granted defendants the ability to argue the substantive merits of the voluntary dismissal on appeal. *Kahle* did not go so far as to make voluntary dismissals the jurisdictional basis from which nonappealable judgments could be appealed. Rather, the court made it abundantly clear that the only proper subject on appeal was the propriety of granting a voluntary dismissal.

In *O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 492 N.E.2d 1322, the court extended the *Kahle* rationale to address yet another concern associated with the granting of a section 2—1009 motion. In *O'Connell* the supreme court held where a plaintiff relies on sections 2—1009 and 13—217 (735 ILCS 5/13—217 (West 1992)) in response to a pending Rule 103(b) (134 Ill. 2d R. 103(b)) motion, the Rule 103(b) motion must be heard on its merits prior to a ruling on plaintiff's motion to dismiss under section 2—1009. *O'Connell*, 112 Ill. 2d at 283, 492 N.E.2d at 1327.

This holding is important for two reasons. First, it acknowledges and furthers the legitimate goal of a fair and expeditious judiciary. Second, it implicitly extends the *Kahle* reasoning to yet another situation where a defendant may be potentially prejudiced through a plaintiff's use of a voluntary dismissal. Specifically, where plaintiffs fail to exercise due diligence in their service of process, defendants

may move for a dismissal with prejudice. (But see *Gibellina*, 127 Ill. 2d 122, 535 N.E.2d 858 (*O'Connell* should be read and applied narrowly).) Consequently, the court's holding recognizes and addresses yet another potential prejudice against defendants. See also *Catlett v. Novak* (1987), 116 Ill. 2d 63, 506 N.E.2d 586.

Finally, in *Gibellina* (127 Ill. 2d 122, 535 N.E.2d 858), the supreme court once again considered the extent to which defendants are prejudiced by plaintiffs' use of voluntary dismissals. *Gibellina* involved the appealability of orders granting summary judgment on behalf of defendants while denying motions for summary judgment on behalf of plaintiffs.

First, the supreme court stated these cases were representative of the many ways in which plaintiffs utilize the voluntary dismissal statute in potentially abusive and innocuous ways. (*Gibellina*, 127 Ill. 2d at 130, 535 N.E.2d at 862.) It noted that plaintiffs' use of section 2—1009 as a sword in order to avoid potentially adverse rulings or decisions on the merits rather than to correct procedural or technical defects has caused a severe strain on our judiciary. (*Gibellina*, 127 Ill. 2d at 137, 535 N.E.2d at 865.) However, the court declined an invitation to alter our statutory scheme and follow the Federal rule pertaining to voluntary dismissals. Rather, to address the misuse, it prospectively modified the standards applicable to voluntary dismissals. Specifically, the supreme court held that trial courts could hear and decide motions filed prior to a section 2—1009 motion when the motions, if favorably ruled on by the court, could result in a final disposition of the case. (*Gibellina* (1989), 127 Ill. 2d at 138, 535 N.E.2d at 866.) However, the court neither explicitly mentioned nor implicitly condoned the appealability of the underlying judgments.

At this point we must briefly pause and note that *Kahle*, *O'Connell*, and *Gibellina* involved factual situations different in kind from that presented here today. In this case, we have a defendant taking advantage of plaintiff's *proper* use of section 2—1009 in order to ask this court to review an otherwise nonappealable judgment. Nevertheless, implicit in each case is a concern over the manner in which a voluntary dismissal is used as well as the effect its use has on the judiciary. This is a concern that we share today. Accordingly, we look to and adopt the reasoning outlined in these cases. Based on this reasoning, we refuse to extend jurisdiction to hear the substantive merits of the trial court's denial of defendant's section 2—619 motion. However, before we continue, we must once again pause and examine two other recent cases.

In *Edward E. Gillen Co. v. City of Lake Forest* (1991), 221 Ill. App. 3d 5, 581 N.E.2d 739, plaintiff filed an amended complaint

against the City of Lake Forest (Lake Forest) and Valders Stone and Marbel, Inc. (Valders), on August 31, 1989. Plaintiff then voluntarily dismissed without prejudice all claims against Valders on February 15, 1990. Counts IV through IX were directed against Lake Forest. Count IX was dismissed for failing to state a cause of action. Then, the court granted Lake Forest's motion for judgment on the pleadings as to damages. The judgment did not contain Supreme Court Rule 304(a) (Official Reports Advance Sheet No. 26 (December 22, 1993), R. 304(a), eff. February 1, 1994) language. The trial court then granted plaintiff's motion to voluntarily dismiss the remainder of his cause of action against Lake Forest. Following the voluntary dismissal, plaintiff appealed both the trial court's dismissal of count IX of his amended complaint and the judgment on the pleadings in favor of Lake Forest.

On appeal, Lake Forest argued the appellate court lacked jurisdiction. The court disagreed. Plaintiff was not appealing the voluntary dismissal, but rather the underlying judgments dismissing count IX of his amended complaint and granting judgment on the pleadings in favor of the defendant. The court reasoned the voluntary dismissal disposed of all matters pending before the trial court concerning plaintiff's cause of action. Consequently, the previous judgments entered in the case became final and appealable at that time. (*Gillen,* 221 Ill. App. 3d at 10, 581 N.E.2d at 742.) Therefore, once the trial court granted plaintiff's motion to voluntarily dismiss his case, the jurisdictional basis to hear the otherwise nonappealable judgments was established.

The appellate court employed somewhat similar reasoning in *Kleiman v. Northwestern Memorial Hospital* (1993), 253 Ill. App. 3d 47, 625 N.E.2d 284. *Kleiman* involved a medical malpractice action which the physician (one of the defendants) moved to dismiss for lack of timely proper service. The motion to dismiss with prejudice was granted as to the adult plaintiffs and without prejudice as to the minor plaintiffs. Discovery continued. Then, approximately two years after the dismissal, the trial court granted plaintiff's motion for a voluntary nonsuit pursuant to section 2—1009 of the Code. Plaintiff appealed the judgment granting the physician's motion to dismiss. The physician moved to dismiss, arguing the appellate court lacked jurisdiction. Prior to hearing the appeal, plaintiff refiled his four-count complaint.

The court looked to *Reagan v. Baird* (1985), 140 Ill. App. 3d 58, 487 N.E.2d 1028, *Howard v. Druckemiller* (1992), 238 Ill. App. 3d 937, 611 N.E.2d 1, and *Gillen* (221 Ill. App. 3d 5, 581 N.E.2d 739). In *Howard*, the court held that voluntary dismissals constitute final, appeal-

able judgments supporting plaintiffs' appeals when trial courts make prejudicial rulings on a portion of a case before the balance of the case is dismissed without prejudice to refiling. Likewise, in *Reagan,* the court noted that a judgment, such as a voluntary dismissal, is final and appealable where it is entered "with prejudice" as to at least some of the parties or claims.

After this analysis, the *Kleiman* court reasoned that once plaintiffs voluntarily dismissed the remaining defendants, the order of dismissal with prejudice as to the adult plaintiffs could be the subject of an appeal without requisite Rule 304(a) language. (*Kleiman,* 253 Ill. App. 3d at 53, 625 N.E.2d at 288.) However, the court held that it did not have jurisdiction to hear the minor plaintiff's appeal since the dismissal was entered without prejudice and he was not precluded from refiling his claim. Finally, because plaintiffs chose to refile their claim, hearing the appeal would violate the policy of avoiding piecemeal appeals. Accordingly, while the underlying dismissal became a final judgment due to the voluntary dismissal, it transformed once again into a nonfinal judgment once the adult plaintiffs refiled their case. *Kleiman,* 253 Ill. App. 3d at 53, 625 N.E.2d at 289.

At this point, we note our research has not yielded any further cases which directly affect the issue involved in this case. Specifically, we have not found any cases in which a voluntary dismissal has been the jurisdictional basis from which this court has heard the substantive merits of a trial court's *denial* of a motion to dismiss. Furthermore, we acknowledge that while the cases we have outlined do not directly resolve the issue presented before us today, they do, nonetheless, illustrate a serious trend with the use and effect of voluntary dismissals. Consequently, we believe they are essential in our analysis.

*Gillen, Kleiman, Reagan,* and *Howard* all involve appeals from judgments which were granted in favor of the moving party. They did not involve a situation, as we have here, in which a trial court heard and denied a potentially dispositive motion. Simply put, the appeals stemmed from prejudicial rulings and the courts made special note of this fact. However, there was no such prejudicial ruling in the case before us. In the present case, the trial court *denied* defendant's section 2—619 motion. This prejudiced no one, nor is there any assertion that the granting of plaintiff's voluntary dismissal somehow affected defendant's rights in the case. While we concede plaintiff's *proper* use of the voluntary dismissal may have created some hardship for the defendant, this fact alone is not now, nor has it ever been, sufficient to establish jurisdiction.

■ It is the issue of potential prejudice which has been paramount throughout the history of voluntary dismissals. Defendants were originally given the right to appeal the granting of voluntary dismissals because of their susceptibility to potential prejudice. Potential prejudice in *Kahle* concerned the propriety of the dismissal with respect to a trial court's legal determination of whether a trial or hearing had not yet begun. (*Kahle*, 104 Ill. 2d at 306, 472 N.E.2d at 789.) Furthermore, on every occasion in which the supreme court has revisited the rule, the central focus continued to be the elimination of potential prejudice. The supreme court has never mentioned, either expressly or implicitly, that a trial court's denial of a motion to dismiss is a proper subject for review simply because a plaintiff chose to exercise his right to voluntarily dismiss his case. The reason is simple. Defendants are not prejudiced simply because a trial court denies their motion to dismiss. This is especially true where plaintiffs properly used a section 2—1009 motion in order to refile their case with a jury demand. Therefore, we simply are not in a position to arbitrarily create jurisdiction where none exists. Accordingly, the appeal is dismissed.

Appeal dismissed.

SLATER and HOLDRIDGE, JJ., concur.